781 F.2d 1432
 UNITED STATES of America, Plaintiff-Appellee,
v.
Antoinette DELA ESPRIELLA, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Margaret CARO, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Alberto DELA ESPRIELLA, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Pablo CHAPOY, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Gustavo RICARDO RONDEROS, Defendant-Appellant.
 Nos. 84-5252 to 85-5255, and 84-5298.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 7, 1985.
Feb. 10, 1986.
 
 Brian Sun, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.
 Phillip G. Trad, Marina Del Rey, Cal., for Antoinette Dela Espriella.
 Marlene Gerdts, Glendale, Cal., for Caro.
 Joseph F. Walsh, Esq., Los Angeles, Cal., for Alberto Dela Espriella.
 Stephen R. Kahn, Los Angeles, Cal., for Chapoy.
 Joseph T. Vodnoy, Los Angeles, Cal., for Ronderos.
 Consolidated Appeals from the United States District Court for the Central District of California.
 Before SKOPIL and CANBY, Circuit Judges, and SOLOMON, Senior District Judge.*
 CANBY, Circuit Judge:
 
 
 1
 These consolidated appeals challenge convictions resulting from a scheme to launder funds derived from narcotics transactions. Following return of a 19-count indictment, appellants Antoinette Espriella, Margaret Caro, Alberto Espriella and Pablo Chapoy each entered conditional guilty pleas to one count of conspiracy to violate the currency reporting laws and to defraud the government, in violation of 18 U.S.C. Sec. 371 and 31 U.S.C. Secs. 5313, 5322, and one count of fraudulent concealment of material facts from the Internal Revenue Service (IRS) relating to the filing of Currency Transaction Reports (CTR's), in violation of 18 U.S.C. Sec. 1001.
 
 
 2
 Appellant Ronderos also conditionally pled guilty to one count of violating 18 U.S.C. Sec. 1001 (Count Ten). In addition, he entered conditional guilty pleas to one count of conspiracy to aid and abet the possession and distribution of cocaine, in violation of 18 U.S.C. Sec. 2 and 21 U.S.C. Sec. 846 (Count One), and one count of causing a financial institution not to file CTR's, in violation of 18 U.S.C. Sec. 2 and 31 U.S.C. Secs. 5313, 5322 (Count Seven). Finally, based on stipulated facts, the district court found Ronderos guilty of one count of operating a currency exchange business that failed to file CTR's, again in violation of 18 U.S.C. Sec. 2 and 31 U.S.C. Secs. 5313, 5322 (Count Six).[1]
 
 
 3
 Appellants entered their pleas while preserving for appeal their contention that the indictment failed to allege a crime under 31 U.S.C. Secs. 5313, 5322. We agree and therefore reverse the convictions as to all appellants except Ronderos. We reverse Ronderos' convictions on Counts Seven and Ten, and we affirm his convictions on Counts One and Six.
 
 BACKGROUND
 
 4
 The indictment charged that, between 1982 and 1984, appellants were involved in a scheme to convert millions of dollars in U.S. currency derived from cocaine trafficking into negotiable instruments such as cashier's checks. Ronderos, as apparent kingpin of this money-laundering operation, employed the other appellants as "runners," who each day carried large sums of currency to various banks and converted the cash into cashier's checks or other negotiable instruments. Under 31 U.S.C. Sec. 5313,[2] financial institutions must file CTR's with the IRS for every currency transaction in excess of $10,000.
 
 
 5
 To avoid the reporting requirement, Ronderos instructed his runners to purchase cashier's checks for less than $10,000 each. Runners would often convert more than $100,000 in a given day, with transactions at as many as nineteen different banking locations.
 
 DISCUSSION
 I. Currency Reporting Act Charges
 
 6
 Appellants contend that Section 5313 does not proscribe intentional transaction restructuring of the sort engaged in here and that the indictment, therefore, did not allege a crime. We review de novo the legal sufficiency of an indictment. United States v. Buckley, 689 F.2d 893, 897 (9th Cir.1982), cert. denied, 460 U.S. 1086, 103 S.Ct. 1778, 76 L.Ed.2d 349 (1983).
 
 
 7
 The precise question at issue was recently considered by this court in United States v. Varbel, 780 F.2d 758 (9th Cir.1986). There, we held that the plain language of Section 5313 and accompanying regulations made clear that CTR's were required only of financial institutions and only when the currency transaction involved $10,000 or more. Id. at 762; accord United States v. Anzalone, 766 F.2d 676, 681-83 (1st Cir.1985). We also held that, because the individual transactions involved were perfectly legal, there could be no violation of 18 U.S.C. Sec. 2 (aiding or abetting a violation of Sec. 5313) or 18 U.S.C. Sec. 1001 (fraudulent concealment of material fact concerning a transaction within the jurisdiction of a federal government agency). Varbel, At 762-63. We think it equally clear from Varbel that, where each currency transactions involves less than $10,000, there can be no conspiracy, under 18 U.S.C. Sec. 371, to violate Section 5313.
 
 
 8
 On the authority of the Varbel decision, we reverse all of the convictions of all appellants except Ronderos. In Ronderos' case, we reverse his convictions on Counts Seven and Ten of the indictment.
 
 II. Remaining Counts Against Ronderos
 
 9
 We still must consider Ronderos' convictions on Counts One and Six. He challenges these convictions on several grounds.
 
 A. Laundering Funds as Aiding and Abetting
 
 10
 Ronderos first argues that an act of money laundering that occurs after the commission of a narcotics offense may not result in prosecution of the launderer as an aider and abettor of the narcotics offense. He therefore believes his conviction for conspiracy under Count One must also be reversed. We disagree.
 
 
 11
 It is today well settled that a person can be liable for conspiracy because he provides a central service to a criminal venture. See, e.g., United States v. Batimana, 623 F.2d 1366, 1368 (9th Cir.) (defendants acted as lookouts), cert. denied, 449 U.S. 1038, 101 S.Ct. 617, 66 L.Ed.2d 500 (1980); United States v. Haro-Espinosa, 619 F.2d 789, 794 (9th Cir.1979) (defendant rented motel room and lent co-conspirator his car). Several courts have addressed laundering of illicit narcotics proceeds directly and have concluded that such activities may be integral to the success of a narcotics conspiracy. See, e.g., United States v. Orozco-Prada, 732 F.2d 1076, 1080 (2d Cir.), cert. denied, --- U.S. ----, 105 S.Ct. 154, 8 L.Ed.2d 92 (1984); United States v. Metz, 608 F.2d 147, 153 (5th Cir.1979), cert. denied, 449 U.S. 821, 101 S.Ct. 80, 66 L.Ed.2d 24 (1980); United States v. Barnes, 604 F.2d 121, 163 (2d Cir.1979), cert. denied, 446 U.S. 907, 100 S.Ct. 1833, 64 L.Ed.2d 260 (1980).
 
 
 12
 Of course, money laundering itself is not a crime, and the mere fact that a person launders monies derived from narcotics activities does not make the launderer part of a conspiracy to violate the narcotics laws. The government must show a "sufficient link" between a defendant's money laundering and the underlying drug transaction to demonstrate that defendant was a member of the conspiracy. Orozco-Prada, 732 F.2d at 1081. In his brief before this court, Ronderos concedes that his money laundering services facilitated the movement of drug profits out of the country. By his guilty plea, Ronderos basically affirmed the government's allegation that his laundering activities occurred in concert with the underlying drug trafficking. We therefore reject Ronderos' contention.
 
 
 13
 B. Ronderos' Status as a Financial Institution
 
 
 14
 Ronderos also challenges his conviction on Count Six. He claims that, as a matter of law, he is not a financial institution for purposes of 31 U.S.C. Sec. 5313 and so he is not subject to the CTR filing requirement. Again, we must disagree.
 
 
 15
 The term "financial institution" is defined both by statute and regulation. Under 31 U.S.C. Sec. 5312(a)(2), the term includes various traditional financial entities, such as banks and brokerages. The statute's 21 sub-subsections make clear, however, that the term "financial institution" is to be given a broad definition. Indeed, 31 U.S.C. Sec. 5312(a)(2)(U) states that "financial institution" is to include any "business or agency carrying out a similar, related, or substitute duty or power the Secretary of the Treasury prescribes."
 
 
 16
 The Secretary's regulations are also quite broad, including in the definition of "financial institution" any person "who engages as a business in dealing in or exchanging currency as, for example, a dealer in foreign exchange or a person engaged primarily in the cashing of checks." 31 C.F.R. Sec. 103.11 (1984). These definitions are consistent with Congress' intent to create a "sweeping law enforcement tool for locating, inter alia, large transfers, in currency, of the proceeds of unlawful transactions." United States v. Goldberg, 756 F.2d 949, 954 (2d Cir.), cert. denied, --- U.S. ----, 105 S.Ct. 2706, 86 L.Ed.2d 721 (1985); see also H.R.Rep. No. 91-975, 91st Cong., 2d Sess. 11-12, reprinted in 1970 U.S. Code Cong. & Ad. News 4394, 4396-97. As the Supreme Court has stated, "Congress recognized the importance of reports of large and unusual currency transactions in ferreting out criminal activity and desired to strengthen the statutory basis for requiring such reports." California Bankers Assoc. v. Shultz, 416 U.S. 21, 38, 94 S.Ct. 1494, 1506, 39 L.E.2d 812 (1974).
 
 
 17
 The Goldberg court recently addressed the very questions presented here; and it concluded, after a thorough review of the legislative history, that the definitions in 31 C.F.R. Sec. 103.11 and 31 U.S.C. Sec. 5312(a)(2) were sufficiently broad to include launderers within the term "financial institution" as that term is used in 31 U.S.C. Sec. 5313. See Goldberg, 756 F.2d at 953-56. We find that reasoning persuasive and hold that Ronderos could be a financial institution for purposes of the offense charged.
 
 
 18
 Ronderos apparently does not dispute that, if he is a financial institution, he violated the reporting requirement. The stipulated facts make clear that Ronderos engaged in laundering activities, that several transactions he handled involved currency amounting to more than $10,000, and that he failed to file CTR's. We therefore reject his attack on the Count Six conviction.
 
 C. Search of Ronderos' Trash
 
 19
 As part of their investigation, federal agents searched trash containers placed for curbside collection outside Ronderos' home. The agents discovered various documents in the trash that were used to obtain a search warrant and were introduced into evidence at trial. Ronderos argues that the district court erred in not suppressing this evidence as obtained in violation of the fourth amendment.
 
 
 20
 We find this argument to be without merit. Warrantless searches of abandoned property do not violate the fourth amendment. Abel v. United States, 362 U.S. 217, 241, 80 S.Ct. 683, 698, 4 L.Ed.2d 668 (1960); United States v. Burnette, 698 F.2d 1038, 1047 (9th Cir.), cert. denied, 461 U.S. 936, 103 S.Ct. 2106, 77 L.Ed.2d 312 (1983). The question, then, becomes whether placing garbage for collection constitutes abandonment of the property. We join the other federal appellate circuits that have considered the matter and hold that it does. See, e.g., United States v. Sumpter, 669 F.2d 1215, 1221 (8th Cir.1982); United States v. Reicherter, 647 F.2d 397, 399 (3d Cir.1981) (citing cases in accord from six other circuits); United States v. Shelby, 573 F.2d 971, 973-74 (7th Cir.), cert. denied, 439 U.S. 841, 99 S.Ct. 132, 58 L.Ed.2d 139 (1978).
 
 
 21
 Ronderos further argues that, even if the search was permissible under federal law, it violated California law and the fruits should be suppressed. We disagree. First, following the June 1982 passage in California of Proposition 8, the state's search-and-seizure law is now generally coextensive with federal law. See Cal.Const. art. I, Sec. 28(d) (West 1983); In re Lance W., 37 Cal.3d 873, 694 P.2d 744, 210 Cal.Rptr. 631 (1985). Second, even if the search violated California law, the evidence would be admissible because it was obtained by federal officials in compliance with federal law. See United States v. Henderson, 721 F.2d 662, 664 (9th Cir.1983) (per curiam), cert. denied, --- U.S. ----, 104 S.Ct. 2665, 81 L.Ed.2d 370 (1984). The evidence was properly admitted.
 
 
 22
 D. Dog Alerts and Failure to Preserve Evidence
 
 
 23
 Finally, Ronderos challenges the district court's denial of his motion to suppress testimony that a narcotics-sniffing dog, able to detect the scent of cocaine on currency, alerted when exposed to currency used by appellants to purchase cashier's checks. Ronderos argues that the government's failure to preserve the currency as evidence denied him due process by depriving him of the opportunity to examine the money, test for traces of cocaine himself, and retest the dogs' ability to detect the drug.
 
 
 24
 The Supreme Court's recent decision in California v. Trombetta, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984), controls our decision on this issue. In Trombetta, the Court held that the due process clause does not require law enforcement officers to preserve breath samples in order to introduce breath analysis tests at trial. Id. at ----, 104 S.Ct. at 2535. The Court established a two-part test to determine whether a failure to preserve evidence constituted a due process violation. First, the unpreserved evidence must "possess an exculpatory value that was apparent before the evidence was destroyed." In addition, the evidence must be "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." Id. at ----, 104 S.Ct. at 2534. As with the breath samples in Trombetta, the currency involved here would not necessarily have been exculpatory. More important, Ronderos had ample opportunity to challenge the reliability of the dogs involved, but he made no attempt to do so. We therefore find that the district court did not err in denying the motion to suppress.
 
 CONCLUSION
 
 25
 Because we find that the currency reporting requirements of 31 U.S.C. Sec. 5313 do not apply to multiple transactions, each involving less than $10,000 but aggregating to more than $10,000, we REVERSE the convictions of appellants Antoinette Espriella, Margaret Caro, Alberto Espriella and Pablo Chapoy. For the same reason, we REVERSE appellant Gustavo Ronderos' convictions on Counts Seven and Ten of the indictment. We also AFFIRM the Ronderos conviction on Counts One and Six, for the reasons discussed above.
 
 
 26
 AFFIRMED IN PART AND REVERSED IN PART.
 
 
 
 *
 The Honorable Gus J. Solomon, Senior Judge, U.S. District Court for the District of Oregon, sitting by designation
 
 
 [1]
 All other charges against appellants were dismissed. With the exception of Ronderos, each appellant was sentenced to short prison terms and small fines. Ronderos received 30 months in prison and a $5000 fine on each count, the prison terms to run concurrently
 
 
 [2]
 31 U.S.C. Sec. 5313(a) provides:
 When a domestic financial institution is involved in a transaction for the payment, receipt, or transfer of United States coins or currency (or other monetary instruments the Secretary of the Treasury prescribes), in an amount, denomination, or amount and denomination, or under circumstances the Secretary prescribes by regulation, the institution and any other participant in the transaction the Secretary may prescribe shall file a report on the transaction at the time and in the way the Secretary prescribes....
 The Secretary has promulgated regulations that further explain the reporting requirement. For example, 31 C.F.R. Sec. 103.22(a) (1984) provides:
 Each financial institution shall file a report of each deposit, withdrawal, exchange of currency or other payment or transfer, by, through, or to such financial institution, which involves a transaction in currency of more than $10,000....
 See also 31 C.F.R. Sec. 103.25 (1984). 31 U.S.C. Sec. 5322 prescribes criminal penalties for violating the Currency and Foreign Transaction Reporting Act.