**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Thomas Michael HAYES,
Defendant-Appellant.**

**No. 86–1099.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 9, 1987.

Decided Sept. 3, 1987.

Diana Samuelson, San Francisco, Cal., for defendant-appellant.

Sanford Svetcov, San Francisco, Cal., for plaintiff-appellee.

Before CANBY, NORRIS and KOZINSKI, Circuit Judges.

---

CANBY, Circuit Judge:

Thomas Michael Hayes appeals his conviction for conspiracy to commit an offense against the United States in violation of 18 U.S.C. § 371. Hayes was indicted for conspiring with his banker not to file reports with the Internal Revenue Service (IRS) on cash transactions exceeding $10,000, as required by 31 U.S.C. § 5313 and 31 C.F.R. §§ 103.22 & 103.25 (1983). We have jurisdiction under 28 U.S.C. § 1291 and we affirm.

## FACTS

Hayes entered into three transactions with bank vice-president Manuel Gonsalves on which the banker did not file "Currency Transaction Reports" (CTRs) under 31 U.S.C. § 5313 and 31 C.F.R. §§ 103.22 & 103.25 (1983). A report is required for each exchange "which involves a transaction in currency of more than $10,000." 31 C.F.R. § 103.22(a) (1983).

The first transaction in issue occurred on November 4, 1983 when, at Hayes' request, Gonsalves came to Hayes' business premises. Hayes gave Gonsalves a brown bag containing $113,500 in cash. The two men spent several hours counting the money, and the banker left to convert the sum into cashier's checks. Gonsalves split the amount into twelve checks of under $10,000 each, made the checks payable to a single escrow company, and listed false names as remitters.[1] Gonsalves delivered the checks to Hayes at his store and did not file a CTR reporting the transaction to the government.

On November 30, 1983, Gonsalves again issued several cashier's checks for Hayes through his bank. The check amounts were under $10,000, totalling $28,500. This time, the cash was separated into stacks for each separate check when the banker collected it; Hayes supplied remitter names and amounts for each check. All checks were made out to the same payee. Gonsalves filed no CTR.

On January 26, 1984, for the third time, Hayes arranged for the banker to convert cash into several cashier's checks for amounts under $10,000. The total amount was $20,000. The money was separated into piles for each check when Gonsalves picked it up. Each check was again made out to the same payee. Again, the banker filed no CTR.

Hayes was indicted on October 9, 1985. Count One charged him with conspiring to evade IRS requirements requiring reports on domestic currency transactions in violation of 18 U.S.C. § 371. Hayes was also indicted in several substantive counts for knowingly and willfully causing the bank to fail to file required CTRs on each transaction in violation of the Currency Transaction Reporting Act, 31 U.S.C. §§ 5313 & 5322(b) and implementing regulations, 31 C.F.R. §§ 103.22 & 103.25. In superseding indictments, Hayes was also charged with violation of 18 U.S.C. § 2 (aiding and abetting).

Before trial, Hayes moved to dismiss the indictment on the ground that the currency transaction reporting laws apply only to financial institutions, not individuals. The district court denied his motion. On February 3, 1986, the jury found Hayes guilty of the conspiracy charged in Count One. He was acquitted of all other charges, including the substantive offenses. Hayes' attorney moved to vacate and set aside the judgment of conviction on March 3, 1986. The district court denied Hayes' motion and sentenced him to one year's imprisonment with credit for time served.[2]

---

1. Gonsalves testified that he split the quantity into amounts under $10,000 because Hayes suggested it. Gonsalves also testified that Hayes asked that his name not be connected with the laundering transactions. Hayes contends that he never discussed IRS reporting requirements with Gonsalves, and did not intend to evade them. Sufficient evidence existed, however, to support the jury's finding that Hayes participated in an agreement with Gonsalves not to report the transactions.

2. Gonsalves entered into a plea agreement in May, 1985, in which he pled guilty to one count of failing to file a CTR in violation of 31 U.S.C. §§ 5312 & 5322. In exchange for his plea and testimony at Hayes' trial, the government recommended that Gonsalves be sentenced to probation and a fine. Prior to Hayes' indictment, the banker was sentenced to two years' probation and a fine of $67.00, which was waived.

Hayes appeals his conviction on the ground that the Currency Transaction Reporting Act and accompanying regulations fail to give adequate notice that reporting is required for same-day, aggregated bank transactions totalling over $10,000. Hayes further contends that the express exclusion of individuals from the reporting requirements demonstrates an intent precluding conspiracy prosecutions of individuals who are not connected with financial institutions.

## DISCUSSION

### A. CURRENCY TRANSACTION REPORTING ACT REGULATIONS

■ The statute underlying Hayes' conspiracy charge provides that "[w]hen a domestic financial institution is involved in a [currency] transaction ... under circumstances the Secretary [of the Treasury] prescribes by regulation, the institution and any other participant in the transaction the Secretary may prescribe shall file a report of the transaction at the time and in the way the Secretary prescribes." 31 U.S.C. § 5313(a). The Secretary has promulgated a regulation requiring financial institutions to file CTRs when they participate in currency transactions involving more than $10,000. 31 C.F.R. § 103.22(a) (1983).[3] Hayes contends that he did not violate 18 U.S.C. § 371 because the Treasury Secretary's regulations do not require a financial institution to report multiple single-day transactions that are under $10,000 each.

We examined the Reporting Act requirements in *United States v. Varbel*, 780 F.2d 758 (9th Cir.1986), which involved several small transactions, made on the same day at different banks, which totalled over $10,000. Interpreting § 103.22, we concluded that banks commit "no crime by failing to report the subject currency transactions, [when] there is no evidence in the record

that the banks had any knowledge of the manner in which the cashier's checks were purchased." *Varbel*, 780 F.2d at 762. Since the statutes and regulations imposed no reporting duties on anyone other than financial institutions, those who structured the transactions committed no crime as principals. Nor could they be aiders and abettors, because the banks committed no crime.

In *United States v. DeLa Espriella*, 781 F.2d 1432 (9th Cir.1986), we reviewed a conspiracy conviction against various "runners" who had similarly structured transactions by buying as much as $100,000 worth of cashier's checks per day, each purchased at a different bank location in an amount less than $10,000. Again, there was no evidence that the bank was aware of the multiple nature of the transactions. Relying on *Varbel*, we held that the multiple purchases of cashier's checks of less than $10,000 could not support convictions of the runners for conspiracy, under 18 U.S.C. 371, to violate the reporting requirements of 31 U.S.C. § 5313(a) and the implementing regulations. *DeLa Espriella*, 781 F.2d at 1435; *see Varbel*, 780 F.2d at 761–62.

Finally, in *United States v. Reinis*, 794 F.2d 506 (9th Cir.1986), we dealt with a conspiracy conviction similar to that in *DeLa Espriella*, except that some of the multiple transactions aggregating more than $10,000 were conducted with the same bank on the same day (although at different branches). The government sought to rely on the Currency Reporting Form, Form 4789, which stated that multiple transactions "by or for any person which in any one day total more than $10,000 should be treated as a single transactions, if the financial institution is aware of them." We held that Form 4789, not having been promulgated as a rule under the Administrative Procedure Act, 5 U.S.C. § 553,

---

**3.** At the time of these transactions, that regulation provided:

> (a) Each financial institution shall file a report of each deposit, withdrawal, exchange of currency or other payment or transfer, by, through, or to such financial institution,

which involves a transaction in currency of more than $10,000. Such reports shall be made on forms prescribed by the Secretary and all information called for in the forms shall be furnished.

31 C.F.R. § 103.22(a) (1983).

could not modify the regulations.[4] Because the bank's failure to report did not violate the regulations, as interpreted in *Varbel* and *DeLa Espriella*, we reversed the convictions. *Id.* at 508.

Hayes would draw from these decisions a conclusion that his transactions with Gonsalves, the bank's officer, cannot be "aggregated" to create a crime. His argument stretches our cases too far. Hayes did not come to an innocent financial institution with a series of transactions of less than $10,000 each. In the first, most egregious instance of November 4, 1983, Hayes presented Gonsalves with one bag of some $113,500, which the two of them then divided up in order to avoid the reporting requirement. Gonsalves, the banker, was hardly innocent; he not only helped divide the money, he came up with a list of false remitters' names and caused his bank to issue cashier's checks for each, all made out to the same payee. There is no need to "aggregate" to consider this exchange as a single transaction in excess of $10,000.[5]

Although they present arguably closer cases, we conclude that the transactions of November 30, 1983, and January 26, 1984, may also be viewed as unitary transactions exceeding $10,000. In each case, cash in excess of $10,000 was delivered to Gonsalves at once, although separated by rubber bands into amounts of less than $10,000 for each check to be issued in the name of a different remitter supplied by Hayes. The checks were all issued to the same payee. The evidence certainly permitted the jury to conclude that Gonsalves received the sums with the intent of issuing separate checks to evade the reporting requirements, and that Hayes agreed with him that this should be done. Gonsalves' receipt of more than $10,000 at one instant

and his complicity in dividing it to avoid the reporting requirements is enough to differentiate this case from *Reinis*. In *Reinis*, the banker was not complicit and knew, at most, only that the same person had engaged in multiple transactions of less than $10,000 each at more than one of the bank's branches on the same day. The conduct of Hayes and his banker goes far beyond that, and can properly be found to violate the reporting requirements.

## B. CONSPIRACY LIABILITY

██ Hayes contends that the regulations, which omit reference to individuals, affirmatively express the Secretary's intent that individuals conspiring with institutions should not be punished.[6]

The Supreme Court has held that certain conspirators cannot be punished "where the definition of the substantive offense excludes from punishment for conspiracy one who voluntarily participates in another's crime." *Pinkerton v. United States,* 328 U.S. 640, 643, 66 S.Ct. 1180, 1182, 90 L.Ed. 1489 (1946) (citation omitted). This narrow exception is of no assistance to Hayes, however. It is generally confined to situations in which the individual charged as a conspirator belongs to the same class of persons that the underlying penal statute was designed to protect. Thus, the Mann Act, for example, has been construed to evince "an affirmative legislative policy to leave [the woman's] acquiescence unpunished" by a federal conspiracy conviction. *Gebardi v. United States,* 287 U.S. 112, 123, 53 S.Ct. 35, 38, 77 L.Ed. 206 (1932). *See also United States v. Nasser,* 476 F.2d 1111, 1119–20 (7th Cir.1973).

The Secretary's regulations place Hayes in no such protected class. His case is the

---

4. Our ruling applied to the 1980 amendment to Form 4789. *See United States v. Murphy,* 809 F.2d 1427, 1430 n. 4 (9th Cir.1987). Form 4789 is not involved in the present case; Hayes' is charged with conspiring to violate the reporting regulations themselves, 31 C.F.R. §§ 103.22(a) & 103.25(a). He does not contend that they were not properly promulgated.

5. *See United States v. Thompson,* 603 F.2d 1200, 1203 (5th Cir.1979). In *Thompson,* the Fifth Circuit held that a bank chairman's knowing

division of a single large-sum transaction into transactions of under $10,000 violated the reporting regulations.

6. *Cf. Varbel,* 780 F.2d at 762 ("only financial institutions are required to file reports"). The authorizing statute specifically gives the Secretary the power to extend cash transaction reporting requirements to participants other than financial institutions. 31 U.S.C. § 5313(a). The Secretary has not done so. *See United States v. Anzalone,* 766 F.2d 676, 681 (1st Cir.1985).

usual one, where an aider and abettor can be punished for conspiring with members of a particular group that is the subject of a criminal prohibition. *See, e.g., Gebardi,* 287 U.S. at 120 & n. 5, 53 S.Ct. at 37 & n. 5. *United States v. Clark,* 765 F.2d 297, 305 (2d Cir.1985) (prosecution of nonbank defendants as aiders and abettors of bank misapplication under statute which applies only to officers, directors, agents, or employees of financial institutions); *United States v. Upshaw,* 685 F.2d 1202, 1204 (9th Cir.1982) (abettor to fraudulent misapplication by bank employee); *United States v. Hazeem,* 679 F.2d 770, 772–73 (9th Cir.), *cert. denied,* 459 U.S. 848, 103 S.Ct. 106, 74 L.Ed.2d 95 (1982) (abettor and conspirator).

Hayes has not shown any way in which the language and history of the reporting statute or regulations indicate a desire to exclude individuals from prosecution under federal conspiracy statutes. We conclude that Hayes' conspiracy conviction is not contrary to the intent underlying 31 U.S.C. § 5313(a) and 31 C.F.R. § 103.22.

## CONCLUSION

Hayes' conviction is AFFIRMED.