**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Phillip L. SEGAL, Defendant–Appellant.**

**No. 87–1238.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 14, 1988.

Decided July 26, 1988.

Robert F. Kane, San Francisco, Cal., for defendant-appellant.

Michael J. Yamaguchi, Asst. U.S. Atty., San Francisco, Cal., for plaintiff-appellee.

Before ALDISERT,[*] WALLACE, and BEEZER, Circuit Judges.

BEEZER, Circuit Judge:

Appellant Phillip Segal was convicted of aiding and abetting a failure to file currency transaction reports ("CTRs"), under 18 U.S.C. § 2 and 31 U.S.C. § 1058. Segal was also convicted of conspiracy to defraud the United States, under 18 U.S.C. § 371.

Segal claims that the Government elicited evidence at trial of unrelated misconduct, that he is not liable as a mere bank "customer," and that the conspiracy conviction under 18 U.S.C. § 371 cannot be punished as a felony, since the accompanying conviction was a misdemeanor.

We affirm.

## I

In 1979, Segal ("appellant") became acquainted with Frank Vignand, assistant manager of a branch of San Francisco Federal Bank.

In early Autumn 1981, appellant and Vignand had several conversations relating to the bank's obligation to report currency transactions.

In November, 1981, appellant told Vignand that he was anticipating receipt of a large sum of cash. Appellant indicated that he wanted to deposit this cash at Vignand's bank without causing a CTR to be filed with the IRS.

On November 6, 1981, appellant informed Vignand that he had received the cash. The same day, appellant's son arrived at Vignand's bank with a briefcase. Appellant's son gave the briefcase to Vignand, stated it contained $88,000, and requested "bank checks." Vignand accepted the currency and transferred it to a vault custodian, Mr. Hill, to verify the amount ($88,200). The currency was in fifty and one-hundred dollar denominations, old, and bundled in rubber bands.

Vignand contacted appellant. Appellant requested that the money be exchanged for bank checks, each less than $10,000. Vignand complied. He provided fictitious names and prepared ten checks in amounts ranging from $7,900 to $9,500. He placed these checks in an envelope and delivered them to appellant's son. Vignand did not file a CTR with the IRS for this transaction. Mr. Hill reported these activities to the IRS, and testified to them at trial.

Appellant and Vignand again conversed about delivering large sums of cash without filing CTRs. Appellant informed Vignand that he was anticipating delivery of $200,000 in cash.

Appellant and Vignand thereafter devised a scheme. Segal maintained two savings accounts, each with balances of $100,000. Two checks, representing passbook loans totalling $180,000, were issued to appellant. The "loans" were secured by appellant's accounts. An additional $20,000 was withdrawn from a third account belonging to appellant. Vignand then converted the two checks and $20,000 cash into four checks, each for $50,000 payable to Pilgrim Commercial, Ltd. ("Pilgrim").

On November 17, 1981, Vignand delivered loan documents, promissory notes and these four checks to appellant. The following day, appellant gave Vignand a suitcase containing $200,000. Vignand opened a joint safe deposit box, in the names of appellant and himself. Vignand deposited the $200,000 in this box, and delivered a box key to appellant.

---

[*] The Honorable Ruggero J. Aldisert, Senior United States Circuit Judge for the Third Circuit, sitting by designation.

From November 18, 1981, to December 23, 1981, Vignand entered the safe deposit box repeatedly to withdraw cash, which he then applied against appellant's outstanding passbook loans.

Vignand did not file a CTR with the IRS for this $200,000 transaction. Appellant paid Vignand approximately $900 for assisting in the transaction.

Appellant was convicted of aiding and abetting the failure to file CTRs under 18 U.S.C. § 2 and 31 U.S.C. § 1058. He was convicted of conspiracy to defraud the United States under 18 U.S.C. § 371.

While appellant was indicted on both transactions, he was only convicted of aiding and abetting the failure to file a CTR for the transaction totalling $200,000. Although aiding and abetting the failure to file a CTR on a $200,000 transaction was initially termed a felony, the parties stipulated that this conviction would be entered as a misdemeanor.

Vignand had pled guilty, under 31 U.S.C. § 1059, to a currency reporting violation involving this $200,000 cash transaction. He had also pled guilty to embezzling $28,000 from appellant.

Appellant's conspiracy conviction, under 18 U.S.C. § 371, resulted in a sentence of six months imprisonment, followed by three years probation. Appellant's currency reporting conviction, under 31 U.S.C. § 1059, resulted in a sentence of three years probation and a fine of $3,000. The second sentence is to run concurrently with the first.

Appellant timely appeals. We have jurisdiction under 28 U.S.C. § 1291.

## II

Appellant argues that the government improperly elicited evidence of misconduct unrelated to the crimes for which appellant was charged.

■■■ We review denial of a motion for mistrial for abuse of discretion. *United*

States v. Morris, 827 F.2d 1348, 1351 (9th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 726, 98 L.Ed.2d 675 (1988). Since there was no objection at trial to the introduction of evidence challenged on appeal, we may reverse only for plain error. *United States v. Young,* 470 U.S. 1, 14–16, 105 S.Ct. 1038, 1045–47, 84 L.Ed.2d 1 (1985); *Morris,* 827 F.2d at 1351.

■■ Vignand testified, on direct and re-direct, that he purchased cocaine from appellant. While evidence of prior crimes is generally inadmissible under Fed.R.Evid. 404(b) and 403, *see, e.g., United States v. Lewis,* 787 F.2d 1318, 1321 (9th Cir.1986), the "invited error" doctrine entitles the government to pursue inquiry into a matter, if evidence thereon was first introduced by defendant. *Burgess v. Premier Corp.,* 727 F.2d 826 (9th Cir.1984); *United States v. Segall,* 833 F.2d 144, 148 (9th Cir.1987).

■■ Defense counsel's opening statement included several explicit references to appellant's use of cocaine. The government's opening statement included no reference to cocaine use or to cocaine purchases, by any party or witness.

From defendant's opening statement, the government could reasonably have anticipated further evidence of appellant's involvement with cocaine. On direct examination, the government stepped through the "open door" and inquired of witness Vignand:

Q: Mr. Vignand, what did you do with the [embezzled] money?

A: Most of it was—actually went back to Segal.

Q: How so?

A: Payment for cocaine.

Q: So you bought cocaine from Mr. Segal; is that correct?

A: That's correct.[1]

Appellant did not object to this line of questioning. On cross-examination, defense counsel questioned Vignand and appellant extensively on their narcotics activi-

---

1. Defense counsel had attacked Vignand's credibility by extensive reference to embezzlement of appellant's money. Vignand sought to explain the embezzlement by reference to the narcotics transactions with appellant.

ties, including purchases and sales. On re-direct, the government followed-up defense counsel's cross-examination questions. Only at this time did defense counsel raise an objection. At the conclusion of all testimony, the court instructed the jury that "[t]his case is not about cocaine."

A ruling on the admissibility of evidence, absent a timely objection, will not result in a mistrial unless the alleged error " 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings' (citation omitted)." *Young*, 470 U.S. at 15, 105 S.Ct. at 1046.

In view of defense counsel's opening statement and his cross-examination questions, we conclude that no unfairness or adverse reflection on judicial integrity results from affirming denial of appellant's motion for mistrial.

### III

Appellant argues that since he was a bank "customer", he is excused from reporting obligations incumbent upon the bank.

■ Generally, customers are under no obligation to report currency transactions. *See generally United States v. Varbel*, 780 F.2d 758 (9th Cir.1986); *United States v. Reinis*, 794 F.2d 506 (9th Cir.1986); *United States v. Dela Espriella*, 781 F.2d 1432 (9th Cir.1986).

■ In this case, appellant falls outside the ambit of the general rule. We have articulated an exception where the customer aids and abets or conspires with a senior bank officer who is liable under the reporting act; such a customer may be held liable as an aider and abettor or as a co-conspirator. *See United States v. Hayes*, 827 F.2d 469 (9th Cir.1987) (customer liable for failure to file CTRs on transactions exceeding $10,000 on showing of complicity with bank vice president).

Moreover, an "aider and abettor can be punished for conspiring with members of a particular group that is the subject of a criminal prohibition." *Hayes*, 827 F.2d at

473; *see also United States v. Heyman*, 794 F.2d 788, 792 (2d Cir.) (where financial institution required to file CTRs, a customer may be held criminally liable for willfully causing financial institution not to file CTRs), *cert. denied*, 479 U.S. 989, 107 S.Ct. 585, 93 L.Ed.2d 587 (1986); *United States v. Thompson*, 603 F.2d 1200, 1203 (5th Cir.1979) (individuals, including customers, may be liable for knowing failure to file CTRs).

Since appellant knowingly conspired with the culpable bank officer, Vignand, to avoid statutory reporting requirements, his convictions under 31 U.S.C. § 1059 and 18 U.S.C. § 371 are not invalid as a result of "customer" status.

### IV

■ Appellant claims that his conspiracy conviction under 18 U.S.C. § 371 cannot be punished as a felony, since the alleged underlying offense is a misdemeanor. We review the interpretation of a statute de novo. *United States v. Varbel*, 780 F.2d 758, 761 (9th Cir.1986).

Appellant was convicted under 18 U.S.C. § 2 and 31 U.S.C. §§ 1058, 1059(2)[2] of willfully aiding and abetting the failure to file CTRs with the IRS on a $200,000 currency transaction. Appellant was also convicted of willfully conspiring to defraud the United States under 18 U.S.C. § 371.

Title 18, U.S.C. § 371 provides:

If two or more persons conspire either to *commit any offense* against the United States, *or to defraud the United States*, or any agency thereof in any manner or for any purpose ... each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment for such misdemeanor. (Emphasis added.)

Appellant argues that the second paragraph of 18 U.S.C. § 371 was intended to prevent felony punishment on either one of

---

**2.** 31 U.S.C. § 5322.

the two conspiracies proscribed by the first paragraph.

While the second paragraph of section 371 does constitute an exception to the first conspiracy in the first paragraph, this exception does not apply to appellant. Although appellant's currency reporting conviction was stipulated a misdemeanor, he was convicted under 18 U.S.C. § 371 of conspiring to "defraud the United States," not of conspiring to commit a specific "offense against the United States."

Appellant conspicuously overlooks prior decisions of this court holding that the second paragraph of 18 U.S.C. § 371 does not apply to a conspiracy "to defraud the United States," but only to a conspiracy "to commit ... [a] [substantive] offense against the United States."

In *United States v. Little*, 753 F.2d 1420 (9th Cir.1984), we held that, "[t]he exception in section 371 which provides that the punishment for conspiracy shall not exceed the maximum punishment for the underlying offense applies only to conspiracies to commit substantive offenses, and not to conspiracies to defraud the United States." *Id.* at 1444; *see also United States v. Nersesian*, 824 F.2d 1294, 1313 (2d Cir.), *cert. denied,* — U.S. —, 108 S.Ct. 355, 98 L.Ed.2d 380 (1987); *United States v. Cure,* 804 F.2d 625, 629 (11th Cir.1986); *United States v. Sans,* 731 F.2d 1521 (11th Cir.1984), *cert. denied,* 469 U.S. 1111, 105 S.Ct. 791, 83 L.Ed.2d 785 (1985).

Here, appellant was indicted and convicted of "conspiracy to defraud the United States." The facts which support that conviction are not limited to appellant's failure to file a CTR on the $200,000 currency transaction. The relevant facts include a series of actions which support appellant's specific intent to aid and abet conspiracy to defraud the IRS, an agency of the United States Government. Since "the conspiracy to defraud prong of 18 U.S.C. § 371 reaches *any* conspiracy for the purpose of impairing, obstructing or defeating the lawful function of any government agency," *Little,* 753 F.2d at 1443 (citing *Dennis v. United States,* 384 U.S. 855, 861, 86 S.Ct. 1840, 1844, 16 L.Ed.2d 973 (1966)), and appellant's

felony conviction is premised on activities separate and distinct from those sufficient to support misdemeanor punishment under 18 U.S.C. § 2 and 31 U.S.C. § 1059, appellant's felony punishment for "conspiracy to defraud the United States," under 18 U.S. C. § 371, is not improper. *See Hayes,* 827 F.2d at 469; *Little,* 753 F.2d at 1443; *see also United States v. Shermetaro,* 625 F.2d 104, 109–11 (6th Cir.1980); *Cure,* 804 F.2d at 628–29; *Sans,* 731 F.2d at 1534.

█ Appellant rejoins that the government is not entitled to seek punishment under the broad statute when a more narrowly-tailored statute exists. By reference to legislative history of both statutes, appellant suggests that Congress intended, in enacting 31 U.S.C. § 1059, to bar prosecution for felony conspiracy to "defraud the government" when "a single violation of a currency reporting law" is alleged.

First, as the indictment indicates, the acts which give rise to appellant's conspiracy conviction are not limited to "a single violation of a currency reporting law." The indictment alleges a pattern of activities which support "conspiracy to defraud."

Second, appellant relies upon *Busic v. United States* for the proposition that a prosecutor may not select the broad over the narrow statute. 446 U.S. 398, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980).

In *Busic,* the defendant was convicted of assault on a federal officer under 18 U.S.C. § 111 and also of carrying a firearm during the commission of a felony under 18 U.S.C. § 924(c). Section 111 includes a penalty enhancement provision, applicable when a weapon is carried during an assault. The defendant was sentenced to consecutive sentences on the basis of enhanced penalty provisions in the two statutes. The Supreme Court held that the additional prosecution and sentencing under section 924(c) was improper, since the predicate felony statute already incorporated a penalty enhancement provision.

*Busic* is entirely inapposite here. First, appellant's sentence does not involve enhanced penalty provisions. His conviction under 31 U.S.C. § 1059 did not implicate that statute's penalty enhancement provision. 18 U.S.C. § 371 does not contain a

penalty enhancement provision. *See Sans,* 731 F.2d at 1534–35.

Second, conduct proscribed by the two statutes is separate and distinct. Under section 371, the jury is "required to find the fraud element rather than just an agreement to fail to file CTRs." *Sans,* 731 F.2d at 1535. Fraud is not an element of prosecution under 31 U.S.C. § 1059. In any event, the rule is well-established that conspiracy to commit a substantive offense and commission of that offense are separate and distinct. *Pinkerton v. United States,* 328 U.S. 640, 643, 66 S.Ct. 1180, 1181, 90 L.Ed. 1489 (1946).

Finally, this court has held that " 'where an act violates more than one statute, the Government may elect to prosecute under either [statute] unless the congressional history indicates that Congress intended to disallow the use of the more general statute.' " *United States v. Jones,* 607 F.2d 269, 271 (9th Cir.1979), *cert. denied,* 444 U.S. 1085, 100 S.Ct. 1043, 62 L.Ed.2d 771 (1980) (quoting *United States v. Castillo-Felix,* 539 F.2d 9, 14 (9th Cir.1976)). The legislative history of the Bank Records and Foreign Transactions Act, Pub.L. 91–508, 84 Stat. 1114, does not proscribe prosecution under other statutes for similar acts. *See* 1970 U.S.Code Cong. & Ad.News 4394–4416.

"[R]epeals by implication are not favored, and effect should be given to overlapping statutes where possible," *Jones,* 607 F.2d at 272 (citing *United States v. Burnett,* 505 F.2d 815, 816 (9th Cir.1974), *cert. denied,* 420 U.S. 966, 95 S.Ct. 1361, 43 L.Ed.2d 445 (1975)). Moreover, "[w]e do not infer from the enactment of a specific statute that Congress intended to preempt, supersede, or impliedly repeal a more general statute that proscribes the same conduct." *United States v. Ruster,* 712 F.2d 409, 411 (9th Cir.1983). Accordingly, we decline to bar prosecution for conspiracy to defraud the United States on the basis that similar conduct gave rise to a violation of the currency reporting statute.

AFFIRMED.