UNITED STATES of America, Plaintiff,

v.

Roberto TORRES LEBRON, et al., Defendants.

Cr. No. 88–336(PG).

United States District Court,
D. Puerto Rico.

Jan. 13, 1989.

Everett de Jesús & Guillermo Gil, Trial Attys. U.S. Dept. of Justice, Río Piedras, P.R., for plaintiff.

Francisco Dolz, Manuel García Malatrasi, San Juan, P.R., Frank Inserni, Hato Rey, P.R., Arturo Negrón García, Santurce, P.R., Aixa Rey, Benicio Sánchez Rivera, Joseph Laws, Carlos Montañez, San Juan, P.R., for defendants.

## OPINION AND ORDER

PEREZ–GIMENEZ, Chief Judge.

On September 15, 1988, defendants were indicted on one count of conspiracy to de-

fraud the United States by failing to file and causing a financial institution to fail to file IRS form No. 4789, Currency Transaction Report ("CTR"), and four counts of aiding and abetting the failure to file CTRs, in violation of 18 U.S.C. §§ 2 and 371; 31 U.S.C. §§ 5312, 5313 and 5322; and 31 C.F.R. §§ 103.22, 103.25 and 105.49. The indictment charged that between September 1983 and September 1984 defendants conspired among themselves to effectuate an elaborate money laundering scheme whereby currency in excess of $1,000,000 was converted into prize winning lottery checks, which were in turn used to purchase certificates of deposit ("CDs") at a local bank, thereby avoiding the filing of any CTRs.

The scheme allegedly worked as follows: On a pre-arranged day defendants Roberto Torres Lebrón, Urbano Torres Lebrón, Iris Rosario Santos and Lourdes Padró Vázquez, and their accountant, Juan Colón Rosa, would deliver large bundles of cash (from $258,000 to $330,000) to the Bayamón I Branch of Citibank, N.A. There, the cash was counted by bank tellers, pursuant to instructions from defendant Norberto Torres Villegas, a bank officer. Torres Villegas had previously agreed with Colón Rosa to arrange for co-defendant Félix González Couso, a lottery ticket vendor, to procure and bring to the bank checks issued by the Puerto Rico lottery corresponding to prize-winning tickets. These checks, made payable to the Torres Lebróns, were exchanged for the cash, and González Couso received a 10% commission for his efforts. The Torres Lebróns then used the checks to purchase certificates of deposit. The scheme was repeated on at least five different occasions. No CTRs were filed for any of these transactions.

Before us is defendants' motion to dismiss the indictment. They advance the following arguments in support thereof: 1) that at the time the above-mentioned transactions took place, defendants were not required to report any of them to the Secretary of the Treasury, and consequently cannot now be prosecuted under the Currency and Foreign Transactions Reporting Act ("the Act"), 31 U.S.C. § 5311, *et seq.;* 2)

that even if defendants can be prosecuted under the Act for causing a financial institution to fail to file CTRs, the indictment must fail because Citibank, N.A., was not required to file CTRs for any of the transactions mentioned therein since these were not "transactions in currency" within the meaning of the Act; and 3) alternatively, that the reporting requirements embodied in the Act were at the time unconstitutionally vague as applied to defendants.

In order to be valid, an indictment must allege that the defendants performed acts which, if proven, constitute the violation of law for which they are charged. *United States v. Polychron*, 841 F.2d 833 (8th Cir. 1988). It must, on the other hand, be dismissed if it fails to allege facts that constitute a prosecutable offense. *United States v. Coia*, 719 F.2d 1120, 1123 (11th Cir.1983), *reh'g denied*, 724 F.2d 978, *cert. denied*, 466 U.S. 973, 104 S.Ct. 2349, 80 L.Ed.2d 822, (1984).

## I.

■ Defendants' predicate that bank customers were not required to file CTRs at the time the above-mentioned transactions took place is correct. 31 U.S.C. § 5313 provides that:

When a domestic financial institution is involved in a transaction for the payment, receipt or transfer of United States coins or currency ... in an amount, denomination, or amount and denomination or under circumstances the Secretary [of the Treasury] prescribes by regulation, the institution and any other participant in the transaction the Secretary may prescribe shall file a report on the transaction at the time and in a way the Secretary prescribes.

The regulations promulgated by the Secretary merely state that "Each financial institution ... shall file a report of each deposit, withdrawal, exchange of currency or other payment or transfer, by, through, or to such financial institution, which involves a transaction in currency of more than $10,000." 31 C.F.R. § 103.22(a). Nothing in the regulations suggests that

customers of financial institutions, as participants in a transaction, must file CTRs. *United States v. Cure,* 804 F.2d 625, 627 (11th Cir.1986). Although the Secretary apparently could have imposed such a duty upon bank customers, he had not done so at the time when the transactions at issue here took place.

However, defendants' conclusion that their actions cannot therefore constitute criminal conduct wholly misconceives the nature of the charges against them. The indictment does not simply charge them with failing to file CTRs, it charges them with conspiring to defraud the United States by causing a financial institution to fail to file CTRs and aiding and abetting a financial institution's failure to file CTRs. Thus, the indictment cannot be dismissed merely because defendants were under no obligation to file CTRs themselves for the transactions mentioned therein.

It is well settled that a bank officer, such as defendant Torres Villegas, can properly be prosecuted under the Act for causing a bank to fail to file a CTR that it was required to file. *See Polychron, supra,* (bank president); *United States v. Shannon,* 836 F.2d 1125 (8th Cir.1988) (bank chairman); *United States v. Heyman,* 794 F.2d 788 (2nd Cir.), *cert. denied,* 479 U.S. 989, 107 S.Ct. 585, 93 L.Ed.2d 587 (1986) (Merrill Lynch employee); *United States v. Thompson,* 603 F.2d 1200 (5th Cir.1979) (bank president); *United States v. Richter,* 610 F.Supp. 480, 489 n. 16 (N.D.Ill.1985) (bank officer). However, the question of whether a *bank customer* can be held liable under the Act for causing a bank to fail to file a CTR which it had a duty to file is subject to some debate.

One line of cases has adopted a position, termed "a sensible, substance-over-form approach in dealing with schemes to circumvent financial institution reporting requirements." *United States v. Tobon–Builes,* 706 F.2d 1092, 1098 (11th Cir.1983), *reh. denied,* 716 F.2d 914 (1983) (citing *Thompson, supra*). It holds that "where a person causes a financial institution not to report currency transactions that it had a duty to report, the person is guilty of the substantive offense." *United States v. Puerto,* 730 F.2d 627, 631 (11th Cir.), *cert. denied sub nom Everett v. United States,* 469 U.S. 847, 105 S.Ct. 162, 83 L.Ed.2d 98 (1984) (citing *Tobon–Builes, supra*); *see also Polychron, supra,* at 836; *United States v. Nersesian,* 824 F.2d 1294, 1312–13 (2nd Cir.1987); *United States v. Hayes,* 827 F.2d 469, 472 (9th Cir.1987); *United States v. Cure, supra,* at 627; *United States v. Giancola,* 783 F.2d 1549, 1552–53 (11th Cir.1986), *cert. denied,* 479 U.S. 1018, 107 S.Ct. 669, 93 L.Ed.2d 721 (1987); *United ed States v. Cook,* 745 F.2d 1311, 1315 (10th Cir.1984), *cert. denied,* 469 U.S. 1220, 105 S.Ct. 1205, 84 L.Ed.2d 347 (1985).

In contrast, a minority of courts have adopted the often criticized position that because neither the Act nor the regulations impose a duty on bank customers to disclose the structured nature of their transactions, there can be neither a substantive violation of the Act nor a violation of 18 U.S.C. § 2(b) by a bank customer. *See United States v. Gimbel,* 830 F.2d 621, 625–26 (7th Cir.1987); *United States v. Larson,* 796 F.2d 244, 246 (8th Cir.1986); *United States v. Varbel,* 780 F.2d 758, 762 (9th Cir.1986); *United States v. Anzalone,* 766 F.2d 676, 681 (1st Cir.1985); *but see Hayes, supra,* at 472 (distinguishing *Varbel*); *Polychron, supra,* at 836 (distinguishing *Larson*).

In the case at bar, we find this minority position distinguishable and the majority's "sensible, substance-over form approach" most applicable. Unlike in *Gimbel, Larson, Varbel,* or *Anzalone,* all of which involved individual bank customers who acted independently of the bank or its agents in structuring their transactions so as to avoid the filing of the requisite CTRs, the government here charges a conspiracy to avoid the filing of CTRs which involves the participation of *bank employees* and *officials* as well as bank customers.

Several circuits have noted the significant distinction between a customer structuring transactions without the bank's knowledge and the bank itself (or its agents) structuring the transaction. *See Nersesian, supra,* at 1312; *Hayes, supra,*

at 427; *Thompson, supra,* at 1202. Our own circuit's decision in *Anzalone* relied heavily on the fact that the defendant there had acted independent of the bank and without its knowledge. 766 F.2d at 683. The *Anzalone* court also significantly distinguished that case from *Thompson* in that the latter involved a bank officer who conspired with a customer to avoid the reporting requirement. *Id.* And in *Hayes* the Ninth Circuit seemingly created a "conspiracy with bank officers" exception to the flat prohibition against prosecuting bank customers which it had previously established in *Varbel.* Indeed, the *Hayes* court found the fact that a bank vice president had assisted the defendant bank customer in structuring his currency transactions so as to avoid the filing of any CTRs to be crucial to its decision imposing criminal sanctions upon the defendant. 827 F.2d at 472.

We find this reasoning equally compelling in the case before us. As in *Polychron, Hayes,* and *Thompson, supra,* the government has charged here a conspiracy between a bank officer and a bank customer to cause the bank to fail to file the requisite CTRs. So long as it can be determined that the bank had a duty to file these reports (see Part II *infra*), which was allegedly evaded by defendants, the indictment properly charges them, in our view, with violations of the Act.

## II.

■ We turn next to the question of whether or not Citibank was required to file CTRs for the transactions referred to in the indictment. It is well settled that a bank customer's liability under the Act for causing a bank to fail to file CTRs depends in the first place on the bank having a duty to file CTRs for the particular transaction(s) in question. *Cure, supra,* at 629; *United States v. Dela Espriella,* 781 F.2d 1432, 1435 (9th Cir.1986); *United States v. Denemark,* 779 F.2d 1559, 1561–64 (11th Cir.1986). *See also Varbel, supra,* at 761–63; *Anzalone, supra,* at 679–83.

31 C.F.R. § 103.22 provides in its pertinent part:

(a) Each financial institution ... shall file a report of each deposit, withdrawal, exchange of currency or other payment or transfer, by, through or to such financial institution, which involves a transaction in currency of more than $10,000.

Prior to October 27, 1986, the only definition of a "transaction in currency" was contained in 31 C.F.R. § 103.11, which provided:

*Transactions in currency.* A transaction involving the physical transfer of currency from one person to another. A transaction which is a transfer of funds by means of bank check, bank draft, wire transfer, or other written order, and which does not include the physical transfer of currency is not a transaction in currency within the meaning of this part.

Defendants here argue that the indictment must be dismissed because Citibank, N.A., was not required to file a CTR for any of the transactions mentioned therein since these were not, according to defendants, "transactions in currency" within the meaning of 31 C.F.R. §§ 103.11 and 103.-22(a). We disagree.

Section 103.22 unambiguously requires financial institutions to file a CTR for any "exchange of currency or other payment or transfer ... through ... such financial institution ... which involves a transaction in currency of more than $10,000." A transaction in currency is defined simply as one which involves "the physical transfer of currency from one person to another."

Defendants argue that the only relevant transactions here were the defendants' purchase of CDs with checks issued payable to them by the Puerto Rico lottery. We concede that such "transactions," viewed in a vacuum, do not in and of themselves trigger a duty on the part of the bank to file CTRs. "Transaction," however, is a "word of flexible meaning" which "may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship...." *Moore v. New York Cotton Exchange,* 270 U.S. 593, 610, 46 S.Ct. 367, 371, 70 L.Ed. 750 (1926). Hence, just as

courts have refused to view "broken up" cash transactions of less than $10,000 occurring at the same bank on the same day in a vacuum, *see, e.g., Giancola, supra* (holding that such "broken up" transactions must be aggregated into one), *accord, United States v. Puerto, supra; United States v. Tobon–Builes, supra; United States v. Thompson, supra,* so too must we look beyond the "paper trail" in order to evaluate the transaction at issue here as a whole.

In the case at bar the indictment charges that on at least five separate occasions defendants conspired among themselves and aided and abetted each other in effectuating an elaborate money laundering scheme whereby bundles of cash in excess of $10,000 were "physically transferred" *through* Citibank, and with the aid of its officers and employees, from the Torres Lebróns to González Couso and his associates, in exchange for lottery checks which were in turn used to purchase CDs at the bank. Thus, the transaction, when viewed as a whole, fits squarely into the Act's definition: a physical transfer of currency in excess of $10,000 from one person to another which is conducted through a financial institution. It is axiomatic that defendants are alleged to have been aware of the statutory duty to report such "transactions in currency," as well as the illegality of deliberate efforts to evade said duty.

### III.

Finally, we must also reject defendants' contention that the reporting requirements embodied in the Act were at the time unconstitutionally vague as applied to them.

■ The "void for vagueness" doctrine requires that a law give a person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he or she may act accordingly. *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972). A statute is fatally vague only when it exposes a potential actor to some risk or detriment without giving him/her fair warning of the proscribed conduct. *Rowan v. United States Post Office Dep't.,* 397 U.S. 728,

740, 90 S.Ct. 1484, 1492, 25 L.Ed.2d 736 (1970). While criminal statutes must fairly apprise those who are subject to them as to the conduct that is proscribed, no more than a reasonable degree of certainty can be demanded. *Boyce Motor Lines, Inc. v. United States,* 342 U.S. 337, 340, 72 S.Ct. 329, 330, 96 L.Ed. 367 (1952); *United States v. Barnett,* 587 F.2d 252, 256 (5th Cir.1979).

Congress enacted the Act "to require certain reports or records where such reports or records have a high degree of usefulness in criminal, tax, or regulatory investigations or proceedings." 31 U.S.C. § 1051. Its constitutionality has been upheld by the Supreme Court. *California Bankers Association v. Shultz,* 416 U.S. 21, 94 S.Ct. 1494, 39 L.Ed.2d 812 (1974).

■ As set forth in Parts I & II of this opinion, the Act as it stood at the time defendants engaged in the conduct for which they have been indicted unambiguously defined a "transaction in currency" as one involving the physical transfer of cash from one person to another. This defintion is reprinted in its entirety on the reverse side of IRS form 4789. The Act made clear that a financial institution was required to file a CTR for any "transaction in currency" in excess of $10,000 occurring "by, through, or to" such financial institution.

In light of the above we cannot say that the Act failed to afford defendants due notice of what constituted a "transaction in currency of more than $10,000." Rather, in our view any person of ordinary intelligence would be able to see from the statute's face that the law requires the filing of a CTR whenever, as here, currency in excess of $10,000 is physically transferred from one person to another by or through a financial institution.

In conclusion, we find that the indictment properly alleges facts which constitute a prosecutable offense as requied by *Coia, supra,* and that the reporting requirements embodied in the Act were not at the time unconstitutionally vague as applied to defendants.

Accordingly, defendants' motion to dismiss is hereby DENIED. Trial of the matter is set for February 6, 1989, at 9:00 A.M.

IT IS SO ORDERED.