UNITED STATES of America,
Appellant,

v.

Chris POLYCHRON, Appellee.

No. 87–1371.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 14, 1987.

Decided March 8, 1988.

Karen Skrivseth, Washington, D.C., for appellant.

Stanley D. Rauls and Samuel A. Perroni, Little Rock, Ark., for appellee.

Before FAGG, Circuit Judge, and BRIGHT and ROSS, Senior Circuit Judges.

ROSS, Senior Circuit Judge.

## I.

This is a government appeal from an order of the district court dismissing an indictment before trial. The indictment charged Chris Polychron (appellee), President of the Grand National Bank of Hot Springs, Arkansas, with two counts of failing to file currency transaction reports (CTRs) or causing them not to be filed, 31 U.S.C. §§ 5313 and 5322 and 18 U.S.C. § 2, with concealing material facts from the Department of the Treasury in regard to those transactions, 18 U.S.C. § 1001, and with conspiring to violate the currency transaction reporting statute and regulations which require the filing of such reports, 18 U.S.C. § 371. On appeal, the government argues that the district court erred in concluding that the indictment against Polychron failed to state a prosecutable offense. The government asserts that the indictment charging a bank president with intentionally structuring transactions in order to avoid the statutory filing requirements sufficiently alleges facts which constitute a crime against the United States. We agree with the government and accordingly reverse the decision of the district court.

## II.

On appeal, Polychron argues that the Reporting Act and its implementing regulations do not provide fair warning that a violation occurs when a bank president structures currency transactions in order to circumvent the reporting laws. He argues that because the regulations neither specifically prohibit the structuring of currency transactions, nor require a CTR to be filed for multiple same-day transactions which in aggregate exceed $10,000, the charges alleged in the indictment fail to state a prosecutable offense.

■ In order to be valid, an indictment must allege that the defendant performed acts which, if proven, constitute the violation of law for which he is charged. If the acts alleged in the indictment do not constitute a violation of law, the indictment is properly dismissed.

■ The indictment in the instant case charges that on or about May 29, 1979, unindicted co-conspirator William R. Anderson opened an account at the Grand National Bank under the name of "William Spaniol." In February, 1982, Anderson deposited proceeds from the maturation of certificates of deposit in the Spaniol account in an amount in excess of $140,000. The indictment alleges that Anderson instructed Chris Polychron, President of the Grand National Bank, to withdraw the $140,000 in cash withdrawals of less than

$10,000 each until the account was depleted and provided Polychron with signed withdrawal slips for that purpose. Subsequently, at Anderson's instructions, between February 9, 1982 and March 12, 1982, Polychron withdrew or caused the withdrawal of the $140,000 from the Spaniol account in fifteen transactions of less than $10,000 each.[1] On both March 9, 1982 and March 11, 1982, Polychron made two withdrawals each, all withdrawals individually under $10,000 but in aggregate amounting to $19,100 and $16,737 for the two respective days. No CTRs were filed for these transactions. Polychron was subsequently charged with violating CTR reporting laws under 18 U.S.C. §§ 2[2] and 1001[3] as to the March 9 and March 11 withdrawals only.

On February 19, 1987, the district court granted a motion to dismiss the indictment against Polychron holding that the bank had no duty to report the March 9 and March 11 transactions because the statute and implementing regulations of the Currency and Foreign Transaction Reporting Act applied only to individual transfers of currency in excess of $10,000 and did not require aggregation of individual same-day transactions. The government now appeals the dismissal of the indictment.

## III.

The Currency and Foreign Transaction Reporting Act, 31 U.S.C. §§ 5311–24 (1982

1. The following withdrawals were made:

| DATE OF WITHDRAWAL | AMOUNT WITHDRAWN |
|---|---|
| February  9, 1982 | $  9,100 |
| February 11, 1982 | 9,450 |
| February 16, 1982 | 8,500 |
| February 17, 1982 | 9,700 |
| February 18, 1982 | 9,800 |
| February 19, 1982 | 9,200 |
| February 25, 1982 | 9,800 |
| February 26, 1982 | 9,900 |
| March  5, 1982 | 9,500 |
| March  9, 1982 | 9,400 |
| March  9, 1982 | 9,700 |
| March 10, 1982 | 9,900 |
| March 11, 1982 | 6,837 |
| March 11, 1982 | 9,900 |
| March 12, 1982 | 9,900 |
| TOTAL | $140,587 |

2. 18 U.S.C. § 2 provides:
   (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
   (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

3. 18 U.S.C. § 1001 provides:
   Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

& Supp. II 1984, Supp. III. 1985) (Reporting Act) provides that "[w]hen a domestic financial institution is involved in a [currency] transaction * * * under circumstances the Secretary [of Treasury] prescribes by regulation, the institution and any other participant in the transaction the Secretary may prescribe shall file a report on the transaction at the time and in the way the Secretary prescribes." 31 U.S.C. § 5313(a). Although the Secretary of the Treasury is clearly authorized under § 5313 to impose filing requirements on both private individuals and financial institutions, the Secretary has required only that financial institutions file currency reports when they participate in "a transaction in currency of more than $10,000." 31 C.F.R. § 103.22(a).[4] A "transaction in currency" is defined under 31 C.F.R. § 103.11(o), as "[a] transaction involving the physical transfer of currency from one person to another." For the purpose of filing the currency transaction reports, the Department of Treasury issued Form 4789 which stated that "[m]ultiple transactions by or for any person which in any one day total more than $10,000 should be treated as a single transaction, if the financial institution is aware of them." U.S. Dept. of Treasury, Form 4789 (1982).

Several circuits have examined at great length the extent to which the Reporting Act imposes criminal liability for the structuring of currency transactions in avoidance of the statutory filing requirements. The courts have focused primarily on the question of whether a bank customer, as opposed to a bank officer, can be criminally liable under the provisions of the Act for causing a bank to fail to file a CTR by not disclosing the structured nature of currency transactions.

One line of cases has adopted a "substance-over-form" approach in dealing with a bank customer's scheme to circumvent the filing requirements. *See e.g., United States v. Hayes,* 827 F.2d 469, 472 (9th Cir.1987); *United States v. Bank of New England,* 821 F.2d 844, 848–49 (1st Cir.), *cert. denied,* — U.S. ——, 108 S.Ct. 328, 98 L.Ed. 356 (1987); *United States v. Cure,* 804 F.2d 625, 629 (11th Cir.1986) (per curiam); *United States v. Giancola,* 783 F.2d 1549, 1552–53 (11th Cir.1986), *cert. denied,* — U.S. ——, 107 S.Ct. 669, 93 L.Ed.2d 721 (1987); *United States v. Thompson,* 603 F.2d 1200, 1203 (5th Cir.1979). In these cases, the courts have reasoned that the customers' structured transactions were in reality the division of one large transaction into several smaller transactions. Where these smaller, multiple transactions have occurred at the same bank, on the same day, the courts have had no difficulty categorizing them as a single transaction in excess of $10,000.

In contrast, a minority of circuits,[5] including our own, has adopted the position that because neither the Act nor the regulations impose a duty on bank customers to disclose the structured nature of their transactions, there can be neither a sub-

---

4. Subsequent to the indictment at issue here, the regulations promulgated pursuant to the statute have been amended to require the filing of CTRs by financial institutions for multiple, same-day currency transactions which in aggregate exceed $10,000. 31 C.F.R. § 103.22(a)(1) (1987). The new regulation reads:

(a)(1) Each financial institution other than a casino shall file a report of each deposit, withdrawal, exchange of currency or other payment or transfer, by, through, or to such financial institution which involves a transaction in currency of more than $10,000. Multiple currency transactions shall be treated as a single transaction if the financial institution has knowledge that they are by or on behalf of any person and result in either cash in or cash out totalling more than $10,000 during any one business day. Deposits made at night or over a weekend or holiday shall be treated as if received on the next business day following the deposit.

5. One circuit which had previously adhered to the position that bank customers could not be liable for structuring currency transactions in avoidance of the Reporting Act, has recently imposed liability on a bank customer for making several individual transactions during the same visit to the bank. *Compare United States v. Anzalone,* 766 F.2d 676, 681 (1st Cir.1985) (bank customer not liable for structuring multiple currency transactions) *with United States v. Bank of New England,* 821 F.2d 844, 848–49 (1st Cir.), *cert. denied,* — U.S. ——, 108 S.Ct. 328, 98 L.Ed.2d 356 (1987) (customer liable for dividing large transaction into smaller, multiple transactions.)

stantive violation of the Act nor a violation of §§ 2(b) or 1001 by a bank customer. *See, United States v. Gimbel,* 830 F.2d 621, 625–26 (7th Cir.1987); *United States v. Larson,* 796 F.2d 244, 246 (8th Cir.1986); *United States v. Varbel,* 780 F.2d 758, 762 (9th Cir.1986).

We distinguish this line of cases, and in particular our own decision in *United States v. Larson, supra,* from the case presently before us. In *Larson,* this court reversed the defendant bank customer's conviction for concealing material facts under 18 U.S.C. § 1001 and held that the Reporting Act imposes no duty on a bank customer to disclose to the bank or the Internal Revenue Service the structured nature of his transactions. *United States v. Larson, supra,* 796 F.2d at 246–47. The court also held that a bank customer could not be held criminally responsible for aiding and abetting the bank's failure to file CTRs under 18 U.S.C. § 2 because "[i]f the banks were unaware that [the customer] was structuring his transactions, [the banks] committed no offense by failing to file CTRs." *Id.* at 247.

*Larson* is distinguishable from the present case. Here, the defendant charged with violating the reporting laws is the president of the bank at which the currency transactions were made, in sharp contrast to a bank customer acting without the bank's knowledge. It is axiomatic that in our case the bank was alleged to be aware of the statutory duty to report as well as the deliberate efforts to evade that duty.

Several circuits have noted the significant distinction between a customer structuring transactions without the bank's knowledge and the bank itself structuring the currency transactions. In *United States v. Nersesian,* 824 F.2d 1294, 1312 (2d Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 357, 98 L.Ed.2d 382 (1987), the court observed that "[h]ad the bank intentionally structured the transactions as [the customer] did, splitting up large sums into blocks of less than $10,000 in order to avoid the filing of a CTR, it surely would have violated the Act as well as been guilty of concealing a material fact in violation of

§ 1001." *Accord United States v. Hayes,* 827 F.2d 469, 472 (9th Cir.1987) (critical to court's imposition of criminal sanction on the defendant bank customer was the fact that the bank vice president assisted the defendant in structuring the currency transaction); *United States v. Heyman,* 794 F.2d 788, 791 (2d Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 585, 93 L.Ed.2d 587 (1986) (had "a financial institution, structured the transaction as [the customer] did, it would have violated federal law"); *United States v. Thompson, supra,* 603 F.2d 1200 (5th Cir.1979) (bank chairman's knowing division of single large-sum transaction into smaller transactions violated the reporting requirements); *United States v. Richter,* 610 F.Supp. 480, 489 n. 16 (N.D.Ill. 1985) (bank officer who structures transactions "would surely violate the Act for failing to file a CTR").

Finally, in a recent decision, *United States v. Shannon,* 836 F.2d 1125 (8th Cir. 1988), this court affirmed the conviction of the chairman of a bank charged with failing to file a required CTR on a cash transaction exceeding $10,000. Although this case is distinguishable from the one before us in that the defendant in *Shannon* did not structure his transactions, the reasoning used by the court in affirming the conviction is relevant to our analysis here. In imposing criminal liability on the bank officer, the court stated, "[i]n light of Shannon's position of control at [the bank], to decide otherwise would thwart the purpose of the reporting statutes." *Id.* at 1128.

We find this reasoning equally significant in the case before us. Polychron's alleged complicity in structuring the withdrawal of currency from an account bearing a false name in an effort to avoid the reporting requirement is enough to differentiate this case from *Larson, supra,* and others dealing with the criminal liability of bank customers who structure currency transactions. By structuring the withdrawals from the Spaniol account, as alleged in the indictment, so that no single transaction involved an amount greater than $10,000, Polychron willfully caused the Grand National Bank to fail to file the appropriate CTRs.

Accordingly, we hold that the Reporting Act sufficiently apprised Polychron that when a financial institution or its officer or employee acting within the scope of his employment structures an otherwise reportable transaction into multiple transactions in a single day that do not individually exceed $10,000, the bank or its officer or employee may be held criminally responsible for failing to file, or causing the bank to fail to file, a CTR. To hold contrary would be to eviscerate the intent of Congress and the meaning of the Reporting Act.

Therefore, we conclude that the district court erred in dismissing the indictment against Polychron. The judgment of the district court is reversed and the cause is remanded for further proceedings consistent with this opinion.