**Michael PILLA, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 88–1497.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 20, 1988.

Decided Nov. 21, 1988.

---

Charles M. Shaw, St. Louis, Mo., for appellant.

Michael K. Fagan, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before JOHN R. GIBSON, WOLLMAN and BEAM, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Michael Pilla appeals from a denial of his motion to set aside his sentence imposed after he pleaded guilty to violating the Currency and Foreign Transaction Reporting Act, 31 U.S.C. § 5313(a), which requires banks to report currency transactions in excess of $10,000, and to aiding and abetting under 18 U.S.C. § 2. Based upon the recommendation of a magistrate, the district court[1] denied the motion. On appeal Pilla argues that while he was on the bank's board of advisors, he was not an employee and had no voice in its operations, and accordingly had no duty to file a currency transaction report. He also argues that his sentence was unfair and unequal to that of his codefendant, Robert Gross, and that the district court improperly denied him a hearing to determine the voluntariness of his guilty plea. We affirm the district court.

Pilla and Gross were charged with six offenses, all of which related to their conduct in the money laundering scheme. Both Pilla and Gross pleaded guilty to count one of the indictment to unlawfully and intentionally causing the failure to file a currency transaction report with the IRS in connection with the deposit of United States currency in excess of $10,000, in violation of 31 U.S.C. § 5313 (1982),[2] 31

---

1. The Honorable George F. Gunn, Sr., United States District Judge for the Eastern District of Missouri.

2. 31 U.S.C. § 5313(a) states in part:
(a) When a domestic financial institution is involved in a transaction for the payment, receipt, or transfer of United States coins or currency (or other monetary instruments the Secretary of the Treasury prescribes), in an amount, denomination, or amount and denomination, or under circumstances the Secretary prescribes by regulation, the institution and any other participant in the transaction the Secretary may prescribe shall file a report on the transaction at the time and in the way the Secretary prescribes. A participant acting

C.F.R. Pt. 103, §§ 103.22,[3] 103.25, and 103.-26 (1987), and 18 U.S.C. § 2 (1982).[4] The other five charges were dismissed. Pilla was sentenced to three years imprisonment and ordered to pay a fine of $25,000. Gross was ordered to pay $5,000 and also received a three year sentence; his sentence, however, was to be suspended after serving six months of confinement, and he would then serve a five year term of probation. Pilla's motion to set aside his sentence brought under 28 U.S.C. § 2255 was denied and he appeals.

Pilla's testimony when he entered his guilty plea is in some respects not a model of clarity, in part due to the interjections of his counsel. Pilla stated clearly, however, that he pleaded guilty to the charge of having the bank not file a currency transaction report, Plea Tr. p. 5, and his counsel stated that he admitted that he and the codefendant Robert Gross, the president of the bank, deposited money in such a way to avoid filing transaction reports. Plea Tr. p. 6.

The factual background of the transaction was set forth in the district attorney's outline of the facts at the plea hearing. The Internal Revenue Service Criminal Investigation Division, acting on information that money laundering activities were taking place at the First Missouri Bank of Warren County, began an investigation, using an undercover agent to represent himself to Pilla as being a drug dealer. This agent advised Pilla, a member of the bank's board of advisors, that he was interested in using a bank to "launder" large amounts of cash without having to identify the source of the money.

At a meeting in a motel on August 30, 1983, Pilla and the agent agreed that approximately $100,000 would be deposited in the Warren County Bank the next day and done in such a way to avoid filing a currency transaction report. During the meeting Pilla contacted Gross, the president of the bank, to discuss opening two accounts to be controlled by Pilla, using fictitious federal employer's identification numbers to establish the accounts. The agent also opened a bank checking account in the name of the Marcelo Meat Company. These accounts were placed in the bank records to facilitate the money laundering scheme and to deceive bank examiners.

The next day the money was deposited into the two accounts controlled by Pilla. The $100,000 deposit included $85,000 in cash. Under 31 U.S.C. § 5313(a), this transaction should have been reported to the IRS through a currency transaction report, but no such report was filed. Pilla then drew checks on those accounts in the amount of $100,000 and gave the checks to the agent, who in turn immediately deposited them in the Marcelo Meat Company account. Pilla received from the agent a commission of $5500 for this first transaction.

In a second transaction, Pilla received a large sum of cash from the agent and filtered it into the agent's account on a daily basis in increments smaller than $10,-000, eventually depositing $43,200. Pilla then mailed the deposit receipts to a post office box in Miami, Florida, which was an address supplied to him by the agent. Pilla received a commission of $4,300 for his work in this transaction. No currency transaction report was filed by the bank.

---

for another person shall make the report as the agent or bailee of the person and identify the person for whom the transaction is being made.

**3.** 31 C.F.R. § 103.22 provides in part:

(a) Each financial institution shall file a report of each deposit, withdrawal, exchange of currency or other payment or transfer, by, through, or to such financial institution, which involves a transaction in currency of more than $10,000. Multiple currency transactions shall be treated as a single transaction if the financial institution has knowledge that

they are by or on behalf of any person and result in either cash in or cash out totalling more than $10,000 during any one business day. * * *

**4.** 18 U.S.C. § 2 provides:

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

After this lengthy outline of the facts, Pilla personally expressed some objections to the reference that the money laundered through the bank was drug money. His counsel then interjected that Pilla was not a bank employee and did not have anything to do with the business of the bank, and Pilla added that he had no say-so in the bank operations at all. Plea Tr. p. 12.

Pilla first argues that because he had no duty to file a currency transaction report under 31 U.S.C. § 5313, he pleaded guilty to the violation of a nonexistent duty. Pilla relies on *United States v. Larson*, 796 F.2d 244, 246–47 (8th Cir.1986), which held that the reporting act only requires the financial institution to file the currency transaction report, and imposes no duty on a bank customer to disclose the structural nature of his currency transactions. *Larson* further held that since the bank was unaware that Larson was structuring his transactions, it committed no offense. A bank customer such as Larson, therefore, could not be guilty of aiding and abetting the bank's failure to file a currency transaction report under 18 U.S.C. § 2.

We are not convinced, however, that *Larson* applies to this case. We recently held in *United States v. Polychron*, 841 F.2d 833, 836 (8th Cir.1988), that there is a significant distinction between a customer structuring a transaction without the bank's knowledge and the bank itself structuring the currency transaction. In *Polychron*, the defendant charged with violating the reporting laws was the president of the bank who owed a "duty" to disclose such currency transaction. Because of the president's close relationship with the bank, the bank was alleged to be aware of the statutory duty to report as well as the deliberate efforts to evade that duty. *Id.*

Here, Pilla contends that *Larson* should apply because he was not in any way employed by the bank and had no "say-so in the bank's operations," and therefore owed no duty to report the transaction. Pilla's status at the bank, however, was far more than that of a customer. The indictment so alleged and the district attorney in his recital of the facts stated that Pilla was an agent of the bank and on the bank's board of advisors. In response, Pilla's counsel denied that Pilla had anything to do with the business of the bank or was a bank employee. Pilla's counsel nevertheless admitted at the sentencing hearing:

> Now Mr. Pilla was honored that he could be an advisor of the bank. Now it's important, Judge, that—and I'm sure you know that that is not an official capacity with the bank. He has nothing really to do with the bank other than to go out and get business for the bank, but to be on any kind of a bank board was beyond his wildest dreams and he did everything he could to get business for that bank.

Sentencing Tr. p. 10.

 Pilla's relationship with the bank was such that during the meeting at the motel with the government agent he was able to contact Gross, the president of the bank, to discuss opening the accounts and using fictitious federal employee identification numbers to establish them. It is evident, therefore, that close cooperation between Pilla and the bank was necessary to avoid the reporting requirements. Based upon these facts and the statements made at Pilla's guilty plea and his sentencing, the magistrate determined that Pilla was not acting solely in the capacity of a customer, but was an advisor and engaged in getting business for the bank, and the district court accepted this recommendation. We affirm and conclude that Pilla's relationship with the bank was such that he had a duty to report the currency transaction. Additionally, unlike the *Larson* case, the bank was aware of the currency transaction report violations because the bank's officer, Gross, was Pilla's codefendant and coconspirator. Thus, Pilla's conduct in aiding and abetting Gross's violation suffices to make his conduct criminal. *See Polychron*, 841 F.2d at 836.

 Pilla also contends that the sentence imposed upon him was grossly unfair and unequal to codefendant Gross's sentence.

However, it is well established that differing sentences between coactors in a criminal transaction is not alone a sufficient basis for section 2255 relief, but such sentencing is instead within the discretion of the district court. *United States v. Garcia,* 785 F.2d 214 (8th Cir.1986). We believe that the district judge did not abuse his discretion in concluding that Pilla was more culpable than Gross in the money laundering scheme and that Pilla therefore deserved a harsher sentence.

■ Finally, Pilla asserts that the district court erred in failing to set a hearing to determine the voluntariness of his guilty plea. Pilla maintains that his plea was involuntary because codefendant Gross pressured him to plead guilty.[5] The decision as to whether a hearing is necessary to determine factual contentions is committed to the discretion of the district court. *United States v. Oldham,* 787 F.2d 454, 457 (8th Cir.1986). The magistrate reviewed the transcript of Pilla's guilty plea, which revealed that Pilla admitted that no one had "threatened or forced [him] in any way to plead guilty * * *." From this statement, the magistrate determined that Pilla's plea was voluntarily given and the district court accepted this recommended finding. We affirm and conclude that no hearing on the issue was necessary.

Accordingly, we affirm the district court's denial of Pilla's motion under 28 U.S.C. § 2255 to set aside his sentence.

---

**5.** The prosecutor had demanded that if a plea were to be entered, it would have to be made by both defendants. Pilla maintains that Gross, a personal friend of Pilla, threatened to commit suicide unless Pilla pleaded guilty with him.