LOKEN, Circuit Judge.
 

 The United States appeals from the district court’s dismissal of most of counts I, III, and IV of a multi-count indictment charging appellees and others with violations of the reporting requirements of the Bank Secrecy Act of 1970 (the “Act”) and its implementing regulations, 31 U.S.C. § 5313(a) and 31 C.F.R. Part 103. In dismissing these portions of the indictment, the district court distinguished our prior decision in
 
 United States v. Polychron,
 
 841 F.2d 833 (8th Cir.),
 
 cert. denied,
 
 488 U.S. 851, 109 S.Ct. 135, 102 L.Ed.2d 107 (1988). We conclude that the conduct charged in the indictment, if proved, would violate the Act as construed in
 
 Polychron.
 
 Accordingly, we reverse.
 

 The indictment alleges that defendants Thomas A. Williams, Ronald Meyer, and Ronald Whitaker each purchased money orders totaling more than $10,000 from three branches of defendant Farm & Home Savings Association in Dallas on September 26, 1984; and that Meyer and defendant Leon Miller each purchased money orders totaling more than $10,000 from three St. Louis branches of Farm & Home on November 28,1984. The Dallas purchases were made with the “knowledge, acquiescence and consent” of defendant Fred Wilmot, then a Senior Vice President of Farm & Home in Dallas, and the St. Louis purchases were made with the “knowledge, acquiescence and counsel” of James Besher, then a Senior Vice President of Farm & Home in St. Louis, who was not named as a defendant. Pursuant to an alleged conspiracy among all the defendants, Farm & Home did not file Currency Transaction Reports (“CTRs”) with respect to any of these purchases, as allegedly required by the Act.
 

 After defendants Farm & Home and Whitaker pleaded guilty to certain of the charges and the district court dismissed Count II of the indictment, relating to the
 
 *1254
 
 Dallas purchases, for lack of venue, the remaining defendants — bank customers Williams, Meyer and Miller and bank officer Wilmot — moved to dismiss Counts I, III and IV.
 
 [1]
 
 Count I charges these defendants, the appellees before this court, with conspiracy to violate the Act in violation of 18 U.S.C. § 371. Count III charges appel-lees with knowingly and willfully causing Farm & Home to fail to file CTRs in connection with the St. Louis money order purchases, in violation of 31 U.S.C. §§ 5313 & 5322 and 18 U.S.C. § 2. Count IV charges appellees with knowingly and willfully concealing the material facts that would have been disclosed to the Internal Revenue Service had CTRs been filed in connection with the St. Louis purchases, in violation of 18 U.S.C. §§ 1001 & 2.
 

 The district court dismissed all charges against appellee Wilmot, the Texas bank officer, because the indictment failed to allege that he had engaged in the deliberate structuring of the St. Louis transactions to avoid the CTR reporting requirement. The district court also dismissed the charge that appellees Meyer, Williams and Miller violated § 1001 on the ground that these bank customers had no duty to disclose their structured transactions to Farm & Home under this court’s decision in
 
 United States v. Larson,
 
 796 F.2d 244 (8th Cir.1986). However, the district court held that the indictment properly charges the customer appellees with aiding and abetting, and conspiring to aid and abet, the nonfiling of CTRs in violation of the Act because it is alleged that Farm & Home was aware of their structuring of the St. Louis purchases.
 

 I.
 

 A fundamental threshold issue in this case is whether, under the Act and regulations in effect in 1984, the facts alleged in the indictment imposed a duty on Farm & Home to file one or more CTRs reflecting the St. Louis money order purchases. The indictment alleges that the customer defendants purchased multiple money orders totaling more than $10,000, but less than $10,000 each, from three branches of Farm & Home on the day in question. In 1984, the regulations
 
 [2]
 
 required Farm & Home to file a CTR in connection with “each ... transfer ... which involves a transaction in currency of more than $10,000,” 31 C.F.R. § 103.22(a). The instructions to Treasury Department Form 4789, the CTR report, advised financial institutions that, “Multiple transactions by or for any person which in any one day total more than $10,000 should be treated as a single transaction, if the financial institution is aware of them.” However, the statute and regulations were not amended to expressly cover such “multiple transactions” until after the 1984 events here in question occurred. Therefore, appellees argue, Farm & Home had no duty to .file CTRs in connection with the St. Louis purchases and appellees cannot be charged with
 
 any
 
 crimes in connection with those purchases under this court’s decision in
 
 Larson.
 

 In
 
 Larson,
 
 we held that a bank customer who purchased ten cashier’s checks at four bank branches on the same day, for the purpose of avoiding the filing of CTRs, was not liable for concealing material facts from the government in violation of 18 U.S.C. § 1001, or of aiding and abetting a violation of the Act in violation of 18 U.S.C. § 2, because the banks were unaware of the structured transactions and thus had no duty to file CTRs. 796 F.2d at 247.
 
 *1255
 
 Although other circuits have held to the contrary,
 
 see, e.g., United States v. Cure,
 
 804 F.2d 625, 629 (11th Cir.1986), we have consistently adhered to our decision in
 
 Larson.
 

 Subsequent to
 
 Larson,
 
 we considered whether the Act’s reporting requirements in effect in 1984 would be violated if a bank officer affirmatively structured a currency transaction, either on his own behalf or on behalf of a bank customer, in order to avoid causing the bank to file a CTR. In
 
 United States v. Polychron, supra,
 
 we held that a bank officer who “structures an otherwise reportable transaction into multiple transactions in a single day that do not individually exceed $10,000” may be criminally liable for causing the bank to fail to file a CTR. 841 F.2d at 837. In
 
 Pilla v. United States,
 
 861 F.2d 1078 (8th Cir.1988), we upheld the conviction of a bank advisory board member who, with the assistance of a bank officer, structured cash transactions in excess of $10,000 with the bank on behalf of a purported drug dealer, without the filing of CTRs. Following
 
 Polychron,
 
 we held that Pilla’s relationship with the bank gave him a duty to report the transactions; moreover, unlike the bank in
 
 Larson,
 
 the bank was aware of the duty to report because a bank officer was Pilla’s co-conspirator.
 
 Id.
 
 at 1081.
 

 In this case, the indictment alleges that appellees Meyer and Miller agreed with Besher, the Farm & Home officer in St. Louis, to cause Farm & Home to fail to file CTRs, and that Miller and Meyer purchased money orders in amounts in excess of $10,000 per person per day without the filing of CTRs “with the knowledge, acquiescence and counsel” of Besher. The district court held that the bank had no duty under
 
 Polychron
 
 to file CTRs in this situation because the bank customers, Miller and Meyer, rather than the bank officer, Besher, actually “structured” the transaction. We disagree. Where the indictment alleges this level of knowledge and participation by a responsible bank employee, we think it immaterial to the bank’s duty to report that the money order purchases were physically handled by the customers at various bank branches. These allegations if proved
 
 [3]
 
 would establish that the bank knew that one or more transactions in excess of $10,000 per day were being structured in an attempt to evade Farm & Home’s reporting requirements under the Act. This is sufficient to impose a duty on the bank to file CTRs under
 
 Polychron,
 
 which in this regard is consistent with the cases from nearly every circuit that has considered the question.
 
 See United States v. Bank of New England,
 
 821 F.2d 844, 850-51 (1st Cir.),
 
 cert. denied,
 
 484 U.S. 943, 108 S.Ct. 328, 98 L.Ed.2d 356 (1987);
 
 United States v. Heyman,
 
 794 F.2d 788, 792 (2d Cir.),
 
 cert. denied,
 
 479 U.S. 989, 107 S.Ct. 585, 93 L.Ed.2d 587 (1986);
 
 United States v. American Investors,
 
 879 F.2d 1087, 1098-1099 (3d Cir.),
 
 cert. denied,
 
 — U.S. -, 110 S.Ct. 368, 107 L.Ed.2d 354 (1989);
 
 United States v. Thompson,
 
 603 F.2d 1200, 1203-04 (5th Cir.1979);
 
 United States v. Hayes,
 
 827 F.2d 469, 472 (9th Cir.1987);
 
 United States v. Cook,
 
 745 F.2d 1311, 1315-16 (10th Cir.1984),
 
 cert. denied,
 
 469 U.S. 1220, 105 S.Ct. 1205, 84 L.Ed.2d 347 (1985);
 
 United States v. Cure,
 
 804 F.2d 625, 627-28 (11th Cir.1986).
 
 Contra, United States v. Risk,
 
 672 F.Supp. 346, 357-58 (S.D.Ind.1987),
 
 aff'd,
 
 843 F.2d 1059, 1061-62 (7th Cir.1988). Appellees’ principal argument on appeal is, in effect, that we should reject this nearly uniform line of authority and overrule
 
 Polychron.
 
 We decline to do so.
 

 II.
 

 With this threshold issue resolved, we now turn to the specific crimes charged in Counts I, III and IV of the indictment.
 

 Count I — The Conspiracy
 

 Count I alleges that appellees and their co-defendants willfully and knowingly
 
 *1256
 
 conspired (i) to defraud the United States by obstructing the governmental function of collecting data through CTRs; (ii) to cause Farm & Home to fail to file CTRs; and (iii) to conceal material facts in a matter within the jurisdiction of the Treasury Department. To state a conspiracy violation under 18 U.S.C. § 371, the government must allege “(1) an agreement to commit an illegal act; (2) an unlawful objective; and (3) an act done in furtherance of the conspiracy committed by at least one of the participants.”
 
 United States v. Cerone,
 
 830 F.2d 938, 944 (8th Cir.1987),
 
 cert. denied,
 
 486 U.S. 1006, 108 S.Ct. 1730, 100 L.Ed.2d 194 (1988).
 

 The district court correctly held that the Count I charges are sufficient as to appellees Meyer, Williams and Miller. The alleged participation of bank officer Besher in the scheme, if proved, would establish that Farm & Home had a duty under
 
 Polychron
 
 to file CTRs in connection with the St. Louis money order purchases. In
 
 Polychron,
 
 the dismissal of a conspiracy count against the participating bank officer was reversed. Likewise, here, the motion to dismiss the conspiracy charges against these bank customers was properly denied.
 
 See also United States v. American Investors, supra,
 
 879 F.2d at 1100-1103;
 
 United States v. Sans,
 
 731 F.2d 1521, 1530-1532 (11th Cir.1984),
 
 cert. denied,
 
 469 U.S. 1111, 105 S.Ct. 791, 83 L.Ed.2d 785 (1985).
 

 The district court dismissed Count I as to appellee Wilmot on the ground that the specific acts alleged “even if proved, do not sufficiently allege a substantive crime against the United States.” We believe that this reflects too narrow a view of the alleged conspiracy.
 

 With respect to Wilmot, the indictment alleges that defendants caused Farm & Home not to file CTRs in connection with the Dallas money order purchases “with the knowledge, acquiescence and consent and at the direction of” Wilmot (Count II);
 
 [4]
 
 that Wilmot and Besher had a telephone conversation before the St. Louis purchases (an alleged overt act); and that defendants then caused Farm & Home not to file CTRs in connection with the St. Louis purchases “with the knowledge, acquiescence and counsel of” Besher (Count IV). While only one of the 34 overt acts alleged in Count I relates specifically to Wilmot, that one, his telephone conversation with Besher, forges a potentially significant link between what might otherwise be separate Dallas and St. Louis conspiracies. Moreover, Count I charges all defendants, including Wilmot, with willful and knowing conspiracy to commit the violations alleged. Under these circumstances, Count I was sufficient as to Wilmot. As we said in
 
 United States v. Thomas,
 
 759 F.2d 659 (8th Cir.1985):
 

 The essence of a conspiracy is the agreement, and once a defendant’s participation has been established he is culpable for everything said or done by any of the other conspirators in furtherance of the conspiracy.
 

 Id.
 
 at 668.
 

 Count III — The Substantive Violations of the Act
 

 Meyer, Williams and Miller.
 
 Count III alleges that the customer appellees violated 31 U.S.C. §§ 5313 and 5322 and 18 U.S.C. § 2 by causing Farm & Home to fail to file CTRs for money order purchases in excess of $10,000 per person per day at three Farm & Home branches in St. Louis. The district court held that the indictment sufficiently alleges that these appellees violated 18 U.S.C. § 2 by aiding and abetting in the non-filing of CTRs in violation of 31 U.S.C. § 5313, because Farm & Home was aware of the wrongful structuring of the transaction by reason of the “knowledge, acquiescence and counsel” of Besher. As the above discussion makes clear, this was a correct application of
 
 Polychron.
 

 Wilmot.
 
 The district court dismissed Count III as to Wilmot because, unlike the bank officer in
 
 Polychron,
 
 the indictment does not charge
 
 him
 
 with “intentionally structuring transactions in order to avoid the statutory filing require
 
 *1257
 
 ments,” and because the specific facts alleged as to Wilmot “do not sufficiently allege a crime against the United States.” We disagree. As discussed above, it was the alleged participation of Besher, not Wil-mot, that imposed a duty on Farm & Home to file CTRs in connection with the St. Louis transactions. Count III alleges that Wilmot knowingly and willfully aided and abetted this St. Louis reporting violation. Though Wilmot could not be charged with the substantive offense of failing to file CTRs in connection with the St. Louis transactions, because he had no duty as a Dallas officer of Farm & Home to do so, he may be charged with aiding and abetting such an offense if he “in some way associated himself with the criminal venture as something he wished to bring about and ... sought by his actions to make it succeed.”
 
 United States v. American Investors, supra,
 
 879 F.2d at 1103. Thus, Count III sufficiently alleges a violation of 18 U.S.C. § 2 by Wilmot.
 

 Count IV — The § 1001 Violation
 

 Count IV alleges that appellees violated 18 U.S.C. §§ 1001 and 2 by concealing from the government, “by scheme and device,” the facts that would have been disclosed had CTRs been filed in connection with the St. Louis purchases. The district court dismissed this Count as to the customer defendants based upon the holding in
 
 Larson
 
 that bank customers have no duty to disclose their conduct to banks, and as to Wilmot because this Count “does not sufficiently allege a crime against the United States.”
 

 We agree that, under
 
 Larson,
 
 the alleged § 1001 violations were properly dismissed as to these defendants because they had no duty to disclose information to the government by filing CTRs. However, Count IV also accuses them of aiding and abetting a § 1001 violation by Farm & Home, in violation of § 2. In
 
 Larson,
 
 the § 2 conviction was reversed because “the banks were unaware that Larson was structuring his transactions,” 796 F.2d at 247. Here, on the other hand, Count IV alleges that bank officer Besher participated in the “scheme and device” to cause Farm & Home to conceal information from the government by failing to file CTRs. Thus, as to the § 2 charge in Count IV, like the § 2 charge in Count III, this case is distinguishable from
 
 Larson.
 

 It is now settled that the charge of failing to file a CTR in violation of 31 U.S.C. § 5313, and the charge of concealing the facts called for on the report in violation of 18 U.S.C. § 1001, are distinct crimes having distinct elements of proof that may be separately punished.
 
 See United States v. Woodward,
 
 469 U.S. 105, 108-09, 105 S.Ct. 611, 612-13, 83 L.Ed.2d 518 (1985) (per curiam). An additional question, however, is whether this indictment adequately charges the bank defendants with knowingly and willfully concealing or covering up a material. fact “by any trick, scheme, or device” in violation of 18 U.S.C. § 1001.
 

 We do not examine this issue in a vacuum. In
 
 United States v. Shannon,
 
 836 F.2d 1125 (8th Cir.),
 
 cert. denied,
 
 486 U.S. 1058, 108 S.Ct. 2830, 100 L.Ed.2d 930 (1988), defendant was a bank chairman who obtained a large cash loan, deposited the cash in the bank’s correspondent account at another bank, and then transferred the money from that account to his personal use, all without the filing of any CTRs. Distinguishing
 
 Larson,
 
 this court affirmed Shannon’s conviction for failing to cause the filing of CTRs, based upon his position of control at the first bank. However, we affirmed the dismissal of a charge that he also violated § 1001 by concealing facts from the second bank which caused it to fail to file a CTR:
 

 To establish a concealment violation of section 1001, the government must prove more than just a passive failure on the part of the defendant to reveal a material fact. Rather, the government must prove an affirmative act by which a material fact is actively concealed. Here ... there was no evidence that the defendant took affirmative steps to conceal these facts from [the second bank].
 

 836 F.2d at 1129-1130 (citations omitted).
 

 In this case, the indictment alleges that the customer appellees, who were in the same relationship to Farm & Home as defendant was to the second bank in
 
 Shannon,
 
 adopted an elaborate plan involving
 
 *1258
 
 numerous individuals,
 
 including Besher, a senior officer of Farm & Home,
 
 to ensure that facts were not disclosed to the government through the filing of CTRs by Farm & Home. Whether this plan as implemented constituted the affirmative steps necessary under
 
 Shannon
 
 to violate 18 U.S.C. § 1001 may well be a close question. But we think it is properly a question for the jury. The indictment, as it must, pleads the necessary elements of the § 1001 offense by Farm & Home and Besher, and fairly informs the customer defendants of the aiding and abetting charges they must defend.
 
 See Hamling v. United States,
 
 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974). Under these circumstances, the § 2 violations alleged in Count IV of the indictment should not be dismissed as to the customers because it fails further to define the “scheme and device” alleged; it is for the jury and the trial court to determine whether appellees’ conduct fell within the statutory proscription.
 
 See United States v. London,
 
 550 F.2d 206, 213 (5th Cir.1977). For the same reasons, we conclude that Count IV sufficiently charges Wilmot with violating 18 U.S.C. § 2 by knowingly and willfully participating in the scheme and device to conceal.
 

 Accordingly, the order of the district court dismissing portions of Counts I, III and IV of the indictment is reversed.
 

 [1]
 

 . Count V of the indictment charged Wilmot with giving false testimony before a St. Louis grand jury investigating possible violations of the Act by Farm & Home and its officers. Count V was not dismissed but is not otherwise relevant to this appeal.
 

 [2]
 

 . The Act requires a domestic financial institution, such as Farm & Home, to "file a report ... at the time and in the way the Secretary [of the Treasury] prescribes” in connection with each currency transaction "in an amount ... or under the circumstances the Secretary prescribes by regulation," § 5313(a). Willful failure to file is punishable under § 5322(a) and (b). Thus, the Secretary’s regulations define the scope of a bank’s reporting duties under the Act. See generally
 
 California Bankers Ass’n v. Schultz,
 
 416 U.S. 21, 37-41, 57-59, 94 S.Ct. 1494, 1505-08, 1515-17, 39 L.Ed.2d 812 (1974), which upheld the constitutionality of the Act.
 

 [3]
 

 . In reviewing the sufficiency of an indictment, we accept the government’s allegations as true, without reference to allegations outside the indicting document.
 
 Boyce Motor Lines v. United States,
 
 342 U.S. 337. 343 & n. 16. 72 S.Ct. 329. 332
 
 &
 
 n. 16, 96 L.Ed. 367 (1952);
 
 United States v. Von Barta,
 
 635 F.2d 999, 1002 (2d Cir.1980),
 
 cert. denied,
 
 450 U.S. 998, 101 S.Ct. 1703, 68 L.Ed.2d 199 (1981).
 

 [4]
 

 . Under
 
 Polychron,
 
 because of Wilmot's alleged participation, Count II properly alleged violations of the Act in connection with the Dallas purchases if venue was proper; the government has not appealed the district court’s dismissal of Count II for lack of venue.