**UNITED STATES of America, Appellee,**

v.

**Ronald MEYER, Appellant.**

No. 92–2324.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 15, 1993.

Decided May 4, 1993.

Richard Tex McConathy, Dallas, TX, argued, for appellant.

Steven A. Muchnick, Asst. U.S. Atty., St. Louis, MO, argued, for appellee.

Before WOLLMAN and BEAM, Circuit Judges, and BOGUE,* Senior District Judge.

WOLLMAN, Circuit Judge.

Ronald Meyer appeals from the judgment of conviction entered by the district court [1] following Meyer's plea of guilty to a charge of conspiring to commit an offense against and to defraud the United States, in violation of 18 U.S.C. § 371. We affirm.

## I.

This case comes before us for the second time. We outline only those facts relevant to this appeal, although a more complete recitation of the facts can be found in our first opinion, *United States v. Farm & Home Savings Ass'n,* 932 F.2d 1256 (8th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 179, 116 L.Ed.2d 141 (1991).

In November 1989, several individuals were indicted for conspiring to violate the Currency and Foreign Transactions Reporting Act (the "Reporting Act"), 31 U.S.C. § 5313(a),[2] and its implementing regulations, 31 C.F.R. Pt. 103. *Farm & Home Sav.,* 932

---

* The Honorable Andrew W. Bogue, Senior United States District Judge for the District of South Dakota, sitting by designation.

1. The Honorable William L. Hungate, United States District Judge for the Eastern District of Missouri, now retired.

2. Title 31 U.S.C. § 5313(a) reads in relevant part as follows:

When a domestic financial institution is involved in a transaction for the payment, receipt, or transfer of United States coins or currency ... in an amount, denomination, or amount and denomination, or under circumstances the Secretary [of the Treasury] prescribes by regulation, the institution and any other participant in the transaction the Secretary may prescribe shall file a report on the transaction at the time and in the way the Secretary prescribes.

F.2d at 1257. The indictment alleged that Meyer had structured several currency transactions to avoid the reporting requirements of the Reporting Act and its regulations. . Meyer allegedly purchased several money orders from three branches of Farm & Home Savings Association ("Farm & Home") in St. Louis, Missouri, on November 28, 1984. *Id.* Although all of the individual money orders were of an amount less than $10,000, the collective amount of the money orders exceeded $10,000. *Id.* at 1257–58. According to the indictment, the purchases were made with the "knowledge, acquiescence, and counsel" of James Besher, who then was the senior vice-president of Farm & Home in St. Louis. Pursuant to the alleged conspiracy, Farm & Home did not file currency transaction reports ("CTRs") for any of the money order purchases. *Id.* at 1257. Count I of the indictment charged that Meyer had conspired with Farm & Home, Besher, and several others (1) to defraud the United States Government by obstructing the governmental function of collecting data through CTRs; (2) to cause Farm & Home to fail to file CTRs; and (3) to conceal material facts from the United States Government. *Id.* at 1260.

In November 1984, when Meyer allegedly structured these transactions to avoid the filing of any CTRs, the Reporting Act's implementing regulations required financial institutions to file a CTR on each currency transaction which involved more than $10,-000. 31 C.F.R. § 103.22(a) (1984).[3] For the purpose of filing CTRs, the Department of Treasury had issued Form 4789, which advised financial institutions that "[m]ultiple transactions by or for any person which in any one day total more than $10,000 should be treated as a single transaction, if the financial institution is aware of them." *Farm & Home Sav.*, 932 F.2d at 1258 (quoting United States Department of Treasury Form 4789). The regulations themselves were not amended to expressly cover such multiple transactions, however, until 1987, after the events alleged in Count I had oc-

curred. *See* 52 Fed.Reg. 11,436 (1987) (codified at 31 C.F.R. § 103.22(a)(1)).

We interpreted and applied the pre–1987 regulations in *United States v. Polychron,* 841 F.2d 833 (8th Cir.), *cert. denied,* 488 U.S. 851, 109 S.Ct. 135, 102 L.Ed.2d 107 (1988). At the instruction of another individual, Polychron, a bank president, made two withdrawals in a single day in 1982 from an account at the bank where he served as president; individually the withdrawals were of amounts less than $10,000, but aggregately they exceeded $10,000. *Id.* at 834. No CTRs were filed for these withdrawals. *Id.* Polychron was subsequently indicted for not filing any CTRs for the withdrawals or causing them not to be filed; for concealing material facts from the government in regard to the withdrawals; and for conspiring to violate the Reporting Act and its regulations. *Id.* at 833.

On appeal, Polychron raised two arguments. First, he argued that the indictment should be dismissed because it failed to allege that he had committed any prosecutable offense. He contended that he could not be convicted of the alleged offenses because he had no duty to report the transactions; he argued that the reporting regulations applied only to individual transactions in excess of $10,000 and did not require aggregation of same-day transactions. *Id.* at 834. We held that Polychron, as president of the bank, had a duty to disclose to his bank the structured nature of the multiple transactions. *Id.* at 836; *see also Pilla v. United States,* 861 F.2d 1078, 1081 (8th Cir.1988) (interpreting and applying *Polychron* ). We further held that because of Polychron's duty to the bank, he personally could be held criminally liable for not filing, or for causing his bank to not file, CTRs in connection with the structured transactions. *Polychron,* 841 F.2d at 836.

Second, Polychron argued that his conviction violated the Due Process Clause of the Fifth Amendment because the Reporting Act and its regulations did not provide adequate notice that a bank president acts unlawfully

---

3. The 1984 version of 31 C.F.R. § 103.22(a) provided in relevant part as follows:
    (a) Each financial institution shall file a report of each deposit, withdrawal, exchange of

currency or other payment or transfer, by, through, or to such financial institution, which involves a transaction in currency of more than $10,000.

when he structures currency transactions to avoid the filing of CTRs. *Id.* at 834. More particularly, Polychron argued that because the regulations neither specifically prohibited the structuring of currency transactions, nor required a CTR to be filed for multiple same-day transactions which exceed $10,000 in the aggregate, they failed to provide adequate notice that his structuring of transactions was illegal. *Id.* We rejected this argument as well. We held that the regulations sufficiently apprised Polychron that when a bank officer acting within the scope of his employment structures transactions, the officer may be held criminally responsible. *Id.* at 837.

In his first appeal to this court, Meyer argued that Count I of the indictment should be dismissed because his alleged conduct, even if proved, would not violate the Reporting Act or the regulations in effect in 1984 at the time of his alleged conduct. He contended that under the 1984 regulations Farm & Home had no duty to file any CTRs on his money order purchases and that he consequently could not be charged with any crime in connection with the purchases. *Farm & Home Sav.,* 932 F.2d at 1258.

On the basis of *Polychron,* we found that Count I sufficiently stated a claim against Meyer. We held that Vice–President Besher's alleged participation in the scheme, if proved, would establish that Farm & Home had a duty under *Polychron* to file CTRs on Meyer's money order purchases. *Id.* at 1260. We stated that because the indictment alleged that Farm & Home through its officer's knowledge was aware of the structuring, it properly charged Meyer, as a bank customer, with conspiring with the bank and its officer to avoid the filing of CTRs in violation of the Reporting Act. *Id.* at 1259.

After our initial opinion, Meyer entered a conditional guilty plea to Count I, reserving the right to appeal his conviction. This appeal followed.

## II.

■ Meyer first argues that his conviction violates his right to due process because the 1984 regulations did not provide fair warning that his conduct was illegal. Similar to Polychron's due process argument, he contends

that the regulations placed no duty on bank customers to file CTRs and that they did not expressly make the structuring of transactions illegal. Consequently, he argues that the regulations failed to warn him that a bank customer could be found criminally responsible for structuring transactions. In the light of our holding in *Polychron,* we find Meyer's argument unpersuasive.

The structuring of the transactions in this case was allegedly done with the "knowledge, consent, and counsel" of Besher, who was the senior vice-president of Farm & Home in St. Louis. In *Polychron* we held that the regulations at issue here adequately warned that when a bank officer acting within the scope of his employment structures transactions to avoid the filing of CTRs, he may be held criminally responsible. Similarly, we now hold that the regulations sufficiently warned that when a bank officer knows of, acquiesces to, and counsels the structuring of transactions at his bank, he may be found criminally liable for not filing, or for causing his bank to not file, CTRs. The regulations therefore adequately apprised Meyer that Besher's conduct was illegal. Pursuant to 18 U.S.C. § 371, Meyer also had notice that conspiring with another individual to commit an illegal act constituted a criminal offense. Accordingly, we hold that Meyer had fair notice that it was illegal for a bank customer to conspire with a bank officer to cause the officer's bank not to file CTRs on structured transactions.

■ As a second argument, Meyer notes that the Reporting Act and its implementing regulations were amended in 1986 and 1987, respectively, to make structuring by a bank customer unequivocally illegal. In 1986, the Reporting Act was amended in relevant part as follows:

No person shall for the purpose of evading the reporting requirements of section 5313(a) with respect to such transaction—

(1) cause or attempt to cause a domestic financial institution to fail to file a report required under section 5313(a);

. . . or

(3) structure or assist in structuring, or attempt to structure or assist in

structuring, any transaction with one or more domestic financial institutions.

Act effective Oct. 27, 1986, Pub.L. No. 99–570, Title I, § 1354(a), 100 Stat. 3207 (codified at 31 U.S.C. § 5324). In 1987, the regulations were amended to provide expressly that "[m]ultiple currency transactions shall be treated as a single transaction if the financial institution has knowledge that they are by or on behalf of any person and result in either cash in or cash out totalling more than $10,000 during any one business day." 52 Fed.Reg. 11,436 (1987) (codified at 31 C.F.R. § 103.22(a)(1)).

Because these amendments were enacted after he engaged in the charged conduct, Meyer argues that he was convicted under unconstitutional ex post facto laws. *See* U.S. Const. art. I, § 9, cl. 3. Meyer was not charged under the amended Reporting Act and regulations, however, but under the Reporting Act and its regulations as they existed in 1984 when he engaged in the conduct. Accordingly, his ex post facto argument is without merit.

The conviction is affirmed.