**UNITED STATES of America**

v.

**Qaiser S. SHABBIR.**

**No. CRIM. AMD 98-0371.**

United States District Court,
D. Maryland.

July 6, 1999.

Bonnie S. Greenberg, AUSA, Baltimore, MD, for plaintiff.

John Donohue, Patrick J. Egan, Donohue & Donohue, Philadelphia, PA, for defendant.

## MEMORANDUM

DAVIS, District Judge.

On September 24, 1998, a grand jury returned an indictment against defendant Qaiser Shabbir on the following counts: Conspiracy to Defraud the Government, 18 U.S.C. § 371; Smuggling, 18 U.S.C. § 545; Making False Statements in Connection with Imports, 18 U.S.C. § 542; and Delivering Misbranded Items, 21 U.S.C. §§ 331, 333. These charges arise from Shabbir's alleged participation in a scheme to import surgical instruments into the United States under a false designation of the country of origin—that of France or Italy, rather than Pakistan, where he actually manufactured the instruments, as a means of making a larger profit on the sale of such devices.

Pending before the Court is Shabbir's Motion to Dismiss Counts 2, 5, 8, and 11 of the Indictment, which allege violations of the Food, Drug, and Cosmetic Act of 1938 ("FDCA"), specifically, 21 U.S.C. § 331, and to Strike Portions of Count 1 (the conspiracy count) that relate to the FDCA. The parties' submissions were thoroughly considered and oral argument was held on June 30, 1999. For the reasons discussed below, I will deny Shabbir's motion.

### I. The Indictment

The Indictment charges, in sum, that Shabbir is the Chief Executive Officer of QSA Surgical Private Ltd. ("QSA"), a company headquartered in Pakistan, which manufactures stainless steel medical and surgical instruments and devices. Sales and Marketing Service, Inc. ("SMS"), a domestic corporation, has been involved in purchasing medical and surgical instruments from QSA since 1973 and importing such devices into the United States. Federal customs law (not the FDCA) requires that medical and surgical devices, and precisely, all items imported into this country, be conspicuously marked to show the name of the country of origin, presumably because of perceived or actual differences in quality and, consequently, market prices.

From 1989 through 1996, as a part of a scheme to misidentify and market devices manufactured in Pakistan as if such devices were manufactured in France or Italy, Shabbir identified his devices with a France or Italy country of origin and began to ship such devices to companies in Italy and France. SMS then purchased and imported into the United States from

companies in those countries the misidentified devices, i.e., those that had been manufactured in Pakistan but identified as manufactured in France or Italy.

## II. Defendant's 12(b)(2) Motion to Dismiss

Shabbir has moved pursuant to Fed. R.Crim.P. 12(b)(2) to dismiss Counts 2, 5, 8, and 11, and to strike the portions of Count 1, which relate to 21 U.S.C. § 331. Fed. Rule Crim. P 12(b)(2) states that:

> any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion .... The following must be raised prior to trial: (2) Defenses and objections based on defects in the indictment or information (other than if it fails to show jurisdiction in the court or to charge an offense which objections shall be noticed by the court at any time during the pendency of the proceedings).

■ To survive Shabbir's motion to dismiss, the indictment must allege that Shabbir committed acts which, if proven, would sustain a violation of 21 U.S.C. § 331. *United States v. Polychron*, 841 F.2d 833, 834 (8th Cir.), *cert. denied*, 488 U.S. 851, 109 S.Ct. 135, 102 L.Ed.2d 107 (1988). A 12(b) motion is permissible only when it "involves a question of law rather than fact." *United States v. Nukida*, 8 F.3d 665, 669 (9th Cir.1993) (citation omitted). Accordingly, Shabbir's 12(b) motion cannot be used as a summary judgment mechanism, nor can the court grant Shabbir's motion if his legal contentions are

inextricably bound up with the facts of the case. I conclude that the indictment alleges conduct which, if proven, would sustain a § 331 violation, and no reason appears to deviate from the plain language of the statute; therefore, I will deny the Defendant's motion.

## III. Applicable Statutory Provisions

The FDCA regulates, *inter alia*, the introduction of certain articles into the United States. *See* 21 U.S.C. § 301 *et seq.* Section 331 prohibits "[t]he introduction or delivery for introduction into interstate commerce of any food, drug, device, or cosmetic that is adulterated and misbranded." 21 U.S.C. § 331(a).[1] "[A] drug or device shall be deemed to be misbranded (a) if its labeling is false or misleading in any particular...." 21 U.S.C. § 352. "[L]abeling" is expansively defined, and includes "all labels and other written, printed or graphic matter (1) upon any article *or* any of its containers or wrappers, or (2) accompanying such article." 21 U.S.C. § 321(m)(emphasis added).[2]

## IV. Analysis

Shabbir identifies four grounds why his motion to dismiss the FDCA allegations should be granted. First, he argues that because the FDCA *does not require* that an instrument be marked with its country of origin, as a matter of law one cannot be found guilty of misbranding an instrument in violation of the statute. Second, Shabbir contends that his compliance with a related portion of the FDCA, specifically subsection (b) of § 352[3], fatally under-

---

**1.** The statute defines "device" as "an instrument, apparatus, implement, machine, contrivance, implant... which is (2) intended for use in the diagnosis of disease or other conditions, or in the cure, mitigation, treatment, or prevention of disease, in man or other animals, or (3) intended to affect the structure or any function of the body of man or other animals...." *21 U.S.C. § 321(h).*

**2.** "If an article is alleged to be misbranded because the labeling is misleading, then in determining whether the labeling is misleading there shall be taken into account (among other things) not only representations made or suggested by statement, word, design, de-

vice, or any combination thereof, but also the extent to which the labeling fails to reveal facts material in light of such representations or material with respect to consequences which may result from the use of the article to which the labeling relates under the conditions of use prescribed in the labeling thereof or under such conditions of use as are customary or usual." *21 U.S.C. § 321(n).*

**3.** Subsection (b) provides that a device will not be considered misbranded if "in package form [ ] it bears a label containing (1) the name and place of business of the manufacturer, packer or distributer; and (2) an accurate statement of the quantity of the contents

mines the Government's allegation of misbranding, because the statute and its implementing regulations permit "France" or "Italy," in this case, to be placed on the items. Accordingly, Shabbir asserts that his instruments, which bear the label of France or Italy, the sites of the "repacking," satisfied the requirements of (b). Therefore, the argument goes, his conduct cannot constitute "misbranding."

Third, Shabbir argues that an examination of the FDCA's legislative pedigree suggests that the FDCA was not intended to encompass false country of origin designations. Specifically, a predecessor 1902 Act prohibited the introduction "of any food or dairy product that is falsely labeled or branded as to the State or Territory in which they shall be made, produced or grown...." Act of July 1, 1902, Chap. 1357, 57th Cong. Sess. 1, 32 Stat. 632. Later, in 1906, Congress defined misbranding to include information "which is falsely branded as to the state, Territory, or country in which it is manufactured or produced." Act of June 30, 1906, Ch. 3915, §§ 8, 9, 10, P.L. 59–394–34 Stat. 768 (1906). This latter provision was repealed, however, upon the enactment of the FDCA in 1938. Shabbir argues that the absence of such language in the 1938 Act represents an intentional decision by Congress not to treat false designations of country of origin as "misbranding" because such false labeling was already covered (as misdemeanors) by U.S. Customs laws.

Fourth (and relatedly), Shabbir contends that his alleged conduct, of aiding and abetting the importation of devices having an incorrect country of origin marking, should be governed solely by the United States Customs laws, and not the FDCA. He notes that 19 U.S.C. § 1304 squarely addresses Shabbir's alleged conduct by providing that "every article of foreign origin... [must] be marked in a conspicuous place as legibly, indelibly, and

permanently as the nature of the article (or container) will permit in such manner as to indicate to an ultimate purchaser... the country of origin of the article." Shabbir argues that because § 1304 (defining a misdemeanor offense) is directly on point, and because § 352 does not even address country of origin, the court should apply "a rule of lenity" and conclude as a matter of law that his conduct is encompassed only by the former statute.[4]

In response, the Government vigorously opposes Defendant's contentions. The Government argues, first, that although the FDCA does not require a device to bear a marking of its country of origin, once an individual brands such a device, if such designation is "misleading," it falls within the ambit of § 331. Thus, the Government contends that because the instruments are falsely marked "France" or "Italy," and there is no indication that they originated in Pakistan, Shabbir's conduct violates § 331.

As to Shabbir's argument as to compliance with subsection (b) of 21 U.S.C. § 352, the Government responds that alleged compliance with (b) does not negate potential liability under subsection (a), the section under which Shabbir is charged. Thus, the misleading nature of the false "France" and "Italy" designations is not obviated because it arguably identifies the repacker of the item. *See United States v. An Article of Food Consisting of 432 Cartons,* 292 F.Supp. 839, 840 (S.D.N.Y.1968)(recognizing that even an accurate statement on the outside of a carton or package will not necessarily cure a misleading or false one contained on the inside label).

In addition, the Government contends that, in any event, Shabbir did not comply with the requirements of subsection (b). First, that portion of the statute applies

in terms if weight, measure, or numerical count." 21 U.S.C. § 352(b).

4. Shabbir argues that the absence of FDA regulations addressing country of origin markings and the absence of a nexus between the country of origin labels and the normal role of FDA to protect the public health and safety compels the dismissal of the counts from the indictment.

when devices are sent in package form and Shabbir's instruments were handled individually. Moreover, the Government asserts, Shabbir has not complied with 21 C.F.R. § 801.1(c), which requires that "[w]here a device is not manufactured by the person whose name appears on the label, the name shall be qualified by a phrase that reveals the connection such person has with such device." Therefore, the Government contends, as a matter of law, the Defendant's alleged compliance with § 352(b) is both irrelevant and factually disputed, in any event.

Next, the Government asserts that Congress can criminalize "the same conduct under two different statutes, one of which provides for misdemeanor punishment and the other felony punishment." *United States v. Mitchell,* 39 F.3d 465, 472 (4th Cir.1994), *cert. denied,* 515 U.S. 1142, 115 S.Ct. 2578, 132 L.Ed.2d 828 (1995). Thus, that Shabbir's conduct could give rise to an indictment under Customs statutes does not foreclose his prosecution under parallel provisions, including the FDCA.

■ Analysis of the foregoing contentions clearly indicates that the Government has the more persuasive arguments and accordingly, I will deny Shabbir's motion. The FDCA's language is unmistakably clear: "the introduction . . . into interstate commerce of any food, drug, device, or cosmetic that is adulterated and misbranded" is prohibited. 21 U.S.C. § 331(a). Shabbir does not dispute that his surgical instruments satisfy the definition of "device." The surgical instruments imported into the United States bore the branding "GP–France" or "GP–Italy," suggesting to the consumer that either France or Italy, as the case may be, was the country of origin. Although these facts must be proven beyond a reasonable doubt at trial, clearly the indictment alleges conduct that falls with the ambit of § 331.

■ Shabbir's alleged compliance with § 352(b) is irrelevant to the legal sufficiency of the indictment and the factual disputes underlying this "defense" are beyond the scope of this court's power to resolve on a motion to dismiss an indictment.

■ Moreover, Shabbir's plea that because the statute has never been applied to conduct such as his and that the FDCA language (in light of the history of predecessor statutes) is ambiguous, calls for application of "a rule of lenity," is unavailing. Although the Government has not cited case law that has previously applied the FDCA in a criminal prosecution related to country of origin labeling, Shabbir does not offer a persuasive reason as to why the statute should not be interpreted according to its plain language. That the FDCA's primary focus may be on the protection of the public health and safety (rather than on the economic or financial interests of consumers), or that the U.S. Customs laws address similar conduct, does not provide a basis for dismissing an indictment otherwise containing sufficient allegations to constitute an offense. Accordingly, Shabbir's motion will be denied.

### V. Conclusion

For the reasons set forth above and at the hearing on the motion to dismiss, Defendant's motion to dismiss counts shall be denied. An order follows.